United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, DAVID REGAN and ELISEO MEDINA, as trustees for SEIU UNITED HEALTHCARE WORKERS-WEST and fiduciaries of the SEIU UNITED HEALTHCARE WORKERS-WEST AND JOINT EMPLOYER EDUCATION FUND, SEIU UNITED HEALTHCARE WORKERS-WEST, an unincorporated association and fiduciary of the SEIU UNITED HEALTHCARE WORKERS-WEST AND JOINT EMPLOYER EDUCATION FUND, and REBECCA COLLINS, as a participant in the SEIU UNITED HEALTHCARE WORKERS-WEST AND JOINT EMPLOYER EDUCATION FUND,<br><br>    Plaintiffs,<br><br>  v.<br><br>SAL ROSELLI, JORGE RODRIGUEZ, JOAN EMSLIE, JOHN BORSOS, JOHN VELLARDITA, GABE KRISTAL, PAUL KUMAR, MARTHA FIGUEROA, BARBARA LEWIS, PHYLLIS WILLETT, DANIEL MARTIN, LAURA KURRE, RALPH CORNEJO, WILL CLAYTON, GLENN GOLDSTEIN, FRED SEAVEY, MARK KIPFER, AARON BRICKMAN, IAN SELDEN, GAIL BUHLER, FREJA NELSON, ANDREW REID, NATIONAL UNION OF HEALTHCARE WORKERS; MARYRUTH GROSS, CONNIE WILSON, ARLENE PEASNALL, CHERIE KUNOLD, FAYE LINCOLN, and DOES 1 through 100, inclusive,<br><br>    Defendants.<br>_____/ | No. C 09-00404 WHA<br><br><br><br><br><br><br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS** |

**INTRODUCTION**

    This action is a small theater of a larger war between two rival healthcare unions vying for the hearts and minds of the rank and file. The larger contest is legitimate on both sides.

1   The smaller theater — this lawsuit — is directed at specific wrongs allegedly done by former
2   officers of the old union before they bolted to organize the new union. While adjusting the
3   rights of the litigants in this litigation, the Court must be careful to prevent either side from
4   exploiting this action to handicap the other in the larger contest. Defendant Borsos moves to
5   dismiss claim one and claims three through six. Defendants NUHW, Rosselli, Kumar and
6   Figueroa move to dismiss claim seven. The TRO issued earlier lays out the basic fact pattern,
7   so this order will proceed directly to the analysis of the motions to dismiss.

## ANALYSIS

On these motions to dismiss, the threshold question is subject-matter jurisdiction. This order holds that subject-matter jurisdiction has been adequately pled, for the following reasons.

**1.   SUBJECT-MATTER JURISDICTION.**

Section 501(a) of the LMRDA expressly imposes fiduciary duties on the "officers, agents, shop stewards, and other representatives of a labor organization" in relation to the union and its members. It lists a half-dozen specific statutory fiduciary duties owed to the union and its members. Section 501(b) expressly allows a union *member* to sue in federal court — *on behalf of the union* — to enforce these duties, if the union itself refuses to do so, subject to obtaining leave of court to sue derivatively on behalf of the union.

It is worthwhile to lay out the words. Section 501, entitled "Fiduciary responsibility of officers of labor organizations," includes the following:

> **(a) Duties of officers; exculpatory provisions and resolutions void.**
>
> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the specific problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization

2

> for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
>
> **(b) Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses.**
>
> When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte.

It is true that Section 501(b) does not also say that labor unions themselves can sue for their own account — but that is already manifestly implied in Section 501(a). It would be topsy-turvy to create a federal fiduciary duty in favor of unions yet *not* create a federal right of action by unions to vindicate it. It would be even more topsy-turvy to allow derivative actions on behalf of unions but *not* to allow direct actions by unions themselves.

The classic case before the McClellan Committee was the union boss who looted the treasury. Congress plainly meant for the union itself, once under new leadership, to be able to sue the ex-boss to recover the money. Indeed, Subsection (b) expressly contemplated the "governing board" of the union will have had its own opportunity to "sue," before providing that a *member* might sue derivatively on behalf of the union. It is very hard to see how Congress would have made the member's right of action turn on whether the union itself had already sued unless Congress meant for the union to have the right to sue as well. That unions were omitted from (b) was only because Congress thought they were already covered in (a). Subsection (b) was used to *expand* the ways in which the fiduciary duties would be vindicated,

3

not to *reduce* them. Although the Supreme Court and the Ninth Circuit have not ruled on the precise point, this order adopts the reasoning of the Seventh Circuit and Eleventh Circuit in holding that Section 501(a) implies a federal right of action in favor of labor unions to enforce the duties established therein. *Int'l Union of Operating Eng'rs, Local 150 v. Ward*, ____ F.3d ____, 2009 WL 1011188 (7th Cir. Apr. 16, 2009). *Int'l Union of Electronic Workers v. Statham*, 97 F.3d 1416, 1421 (11th Cir. 1996).

In holding that Section 501(b) is limited to suits by union members and that unions themselves cannot sue under Section 501(b), *Building Materials & Dump Truck Drivers Local 420 v. Traweek*, 867 F.2d 500, 506–07 (9th Cir. 1989), did not consider whether Section 501(a) implies a right of action by unions. The actual holding of *Traweek* expressly pertained only to Section 501(b) and *not* to Section 501(a). *Id*. at 507 (col. one). Moreover, *Traweek* involved a union suit against a mere *member* (for unpaid dues). Section 501(a), however, contemplates suits against "officers, agents, shop stewards and other representatives of a labor organization," not against mere members. The present suit is aimed at "officers, agents, shop stewards and other representatives." It is not aimed at mere members. *Traweek* had no occasion to consider the fact pattern here at issue.

Here, it is alleged that defendants were officers, agents and other representatives of UHW and that they stabbed the UHW in the back by trashing or allowing others to trash the records and property of the union, all the while planning to launch a competing union, the NUHA. Subject to proof, this plainly is actionable under Section 501(a) by the union and therefore this suit is anchored in federal-question jurisdiction. 28 U.S. 1331.

To sustain subject-matter jurisdiction, therefore, it is unnecessary to reach or rely on Section 301(a). Nonetheless, as stated earlier, this order repeats that for injunctive relief, Section 301(a) would confer subject-matter jurisdiction as well. Section 301(a) of the LMRA, 29 U.S.C.A. 185(a) states, that "[suits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations, may be brought in any district court of the United States . . . ." This language has been narrowed by the Supreme Court to exclude damage actions by employers against individual union members and officers for violating a

4

no-strike provision in a collective bargaining agreement, *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401 (1981), leaving in place damage and injunctive suits against a union itself. The last few sentences of the last footnote of the opinion for the Court, in acknowledging that an injunction against the union would lie, expressly stated that an injunction against the individual union members *might* also lie, subject to the anti-injunction rules under the Norris-LaGuardia Act, 29 U.S.C. 104. (None of these rules would bar an injunction here.) At a minimum, *Reis* left the question open whether an injunction against officers and members would be allowed. In an earlier order herein, the undersigned ruled that an injunction against the former officers may be the only effective remedy, as seems to be the case on the facts alleged and, therefore, held that such a limited Section 301 suit would lie. Put differently, this is a case against a labor organization (the NUHA) and the individuals are necessary as relief defendants.

### 2. THE TRADE SECRETS CLAIM.

With respect to the California trade-secret claim, defendants invoke preemption under the National Labor Relations Act. The state-law claim alleges that defendants violated Civil Code Section 3426 by misappropriating membership lists and other similar information allegedly constituting "trade secrets" within the meaning of that provision.

Defendants contend that the claim is preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 263 (1959). As the Ninth Circuit recently explained:

> In *Garmon*, the Court held that states may not regulate activity that is actually or arguably protected or prohibited by the NLRA: "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield" . . . .

*Adkins v. Mireles*, 526 F.3d 531, 538–39 (9th Cir. 2008). An action is not preempted, however, where "the activity regulated was a merely peripheral concern" of the Act. *See, e.g.*, *Vaca v. Sipes*, 386 U.S. 171, 179–80 (1969).

5

Defendants' theory is that the conduct targeted by the claim is arguably "protected" by Section 7, which provides:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining . . . .

29 U.S.C. 157.

This order need not reach this *Garmon* issue, for it holds that the union membership lists cannot qualify as a trade secret in the first place. "Trade secrets" are defined as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).

The complaint alleges that UHW's "trade secrets" included "lists and other information and data identifying its members and their contact information (including but not limited to their addresses, telephone numbers, and e-mail addresses)" (Compl. ¶ 116).

Plaintiffs point to decisions regarding customer lists. Generally,

> courts are reluctant to protect customer lists to the extent they embody information which is "readily ascertainable" through public sources, such as business directories . . . On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. *Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers*.

*Morlife Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521–22 (1997) (emphasis added). It is true that whether or not information is "readily ascertainable" is not part of the "trade secret" definition and has been found instead to constitute "a defense . . . based upon the absence of misappropriation." *Imax Corp. v. Cinema Technologies*, 152 F.3d 1161, 1168 n.10 (9th Cir. 1998). Nevertheless, the allegations must plausibly allege that the purported "trade secret" is not "generally known" in the industry. Cal. Civ. Code § 3426.1(d)(1).

6

In the *business* context, if the clients or customers are known in the industry, a list of them will not be deemed trade secrets. Similarly, it is implausible, at least under the circumstances here presented, that plaintiff's bare list of members and their contact information could be a trade secret. Union membership is drawn from a discrete and commonly known pool of employees. *See Morlife Inc.*, 56 Cal. App. 4th at 1521–22; *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1200–02 (S.D. Cal. 2008). A list of union members has never been held to be a trade secret.

The analogy to business customers is false. A list of union members is different from a customer list. Customers buy from the same seller and have nothing else in common. They do not know about each other. The public usually does not know who buys what. By contrast, union members have much in common. They stand shoulder to shoulder. That is the whole point of a union. The union represents all of them. All of them combine in common cause. They attend the same meetings and engage in the same concerted activities. They know their fellow members. Moreover, the bargaining unit definition is public. Exactly who within the unit is a card-carrying member of the certified representative is not much of a secret.

Yes, defendants must return the physical embodiments of any purloined lists (just as they must return all physical property of plaintiffs), but defendants are free to use whatever information they remember from those lists and their years of service with UHW. That membership information was never a trade secret under California law.

### 3. ALL OTHER CLAIMS.

As for mootness, the undersigned knows enough about the case to know it is not entirely moot. If the upcoming preliminary injunction hearing shows mootness, then, at least to that extent, relief will be denied. As to the requirement for irreparable harm, such harm has been adequately alleged and the undersigned will be careful, in awarding any injunctive relief, not to violate *American Trucking Association, Inc. v. City of Los Angeles*, ____ F.3d ____, 2009 WL 723993 (9th Cir. Mar. ___, 2009).

7

As to the argument that Defendant Borsos has legitimately withheld documents based on attorney-client privilege, that issue is presumably before Magistrate Judge Maria-Elena James and is premature here.

As to the other state law claims, the Court will retain supplemental jurisdiction over them but this order declines to rule any of them in or out as a pleading matter with one exception above (the trade-secrets claim). The federal Section 501(a) claims seems likely to drive this action, and the state law claims seem like overkill.

The motions to dismiss are **DENIED** without prejudice to move again in some more concrete context except as to the trade-secrets claim, as to which dismissal is **GRANTED**. Although defendant Borsos moved to dismiss only on behalf of himself, numerous other defendants filed motions to join the Borsos motion (Dkt. Nos. 121, 144, 148, 164). Leave to join the Borsos motion is hereby **GRANTED** and the above-described rulings apply equally to each defendant.

**IT IS SO ORDERED**.

Dated: May 14, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE