IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES INTERNATIONAL UNION, *et al.*,

    Plaintiffs,

v.

SAL ROSSELLI, *et al.*,

    Defendants.
_____/

No. C 09-00404 WHA (MEJ)

**DISCOVERY ORDER**

### I. INTRODUCTION

Pending before the Court is a pair of discovery disputes arising in connection with the Temporary Restraining Order entered by the presiding judge in this matter, the Honorable William Alsup, on April 8, 2009 (Dkt. #101). The first dispute involves documents Defendants have withheld from production based on an assertion of attorney-client privilege. The second contested issue concerns Defendants' efforts to sort through personal materials to segregate out materials that belong to Plaintiff UHW and prepare a log cataloging all materials being withheld on the basis that they are private or based on any other recognized privilege. Despite the undersigned's order requiring the parties to submit joint letters detailing the dispute and their respective positions, the parties have filed separate letters setting forth their arguments. (Dkt. ## 177, 178, 182, 185, 186.) Additionally, pursuant to the Court's May 15, 2009 Discovery Order, Defendants have filed a Response brief addressing the Defendants' current position on the outstanding discovery issues. (Dkt. #209.) Plaintiffs thereafter filed a Reply brief. (Dkt. #210.) On May 21, 2009, the Court held

a hearing on these matters. During the hearing, the Court announced portions of its rulings from the bench and advised the parties that a detailed written order would be forthcoming. Having carefully considered the parties' letters, supporting materials, legal authorities, and arguments presented at the May 21 hearing, the Court now rules as follows.

## II. BACKGROUND

The starting point for resolving the parties' discovery disputes is the April 8 TRO. In that Order, the Court expressly identified the information and materials that Defendants were obligated to immediately turn over to Plaintiffs, as well as the steps Defendants were to take with respect to materials they sought to withhold from production.

As to the body of materials that Defendants must return to UHW, the Court explained:

> This order is anchored in the principle that all communications, information or property made or acquired by any officer or employee of UHW in the course of their employment belongs to UHW. This would include notes, emails, letters, memos, forms, post-its, badges, photographs and so on - any *information*, however recorded, and any *property*, however embodied. This would also include any and all information pertaining to the UHW resistance scheme, for all of that was - up until the moment of the trusteeship and notice thereof - done in the course of employment for UHW.
>
> Defendants have drawn a distinction between "official property" versus all other materials. This is a counterfeit distinction. *Any* information generated by a UHW employee or agent in the course of his or her UHW employment, including information regarding how UHW should resist any trusteeship efforts, *belongs to UHW*, not to the individual employees or agents. Although new management has assumed control of UHW (and has done so through a process of uncontested legitimacy), the change in management does not change the fact that UHW still owns the information and is entitled to get it back - even if it means that UHW's new management will learn of the details of the resistance scheme. Nor does informality matter. It does not matter that UHW information was placed on informal notes or placed by defendants on private cell phones or Blackberries (or other PDAs). *Any* information recorded in *any* manner in the course of UHW employment, including UHW efforts to resist any trusteeship, belonged to UHW at the time and *still* belongs to UHW today.

(TRO at 3-4.) After finding that Plaintiffs had established a likelihood of success on the merits, as well as a likelihood of irreparable injury should relief be denied, the Court granted Plaintiffs' Motion for TRO in part. In doing so, the Court announced a list of objectives that Defendant NUHW and the Individual Defendants were to satisfy in advance of the preliminary injunction hearing. Those relevant to the instant disputes are as follows:

2

    1.   Until the evidence is turned over as set forth below, defendants must preserve any and all UHW property within their possession, custody and control and to continue to comply fully with Paragraph 4 of the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup (an order both sides must honor).

    2.   Defendants must return immediately to UHW all non-electronic UHW information and copies thereof without making further copies. This should be done through attorney Dan Siegel. Full turnover to plaintiffs must occur by **APRIL 16, 2009.**

    3.   Defendants must immediately cause complete images to be made of *all* electronic information resident on *any* computer, Blackberry, PDA, cell phone or other electronic storage medium in their possession, custody or control regardless of whether the device is or was a UHW device and regardless of whether the device was or is privately owned or acquired. The imaging must include *all* information, not just UHW information. A procedure will be provided to sort private and/or privileged material from UHW material. The images and the devices must be retained by Attorney Dan Siegel for safekeeping pending further order. Written notification of compliance must be given on a name-by-name basis to plaintiffs' counsel by **APRIL 16, 2009**.

    4.   No later than **APRIL 16, 2009**, Attorney Siegel shall provide counsel for UHW copies of all UHW information referenced above save only those for which a good-faith assertion of privilege is made and/or for which it appears conclusively that the subject matter is wholly private with no relationship to UHW. Any withheld material shall be catalogued and identified in a log in accordance with Paragraph 16 of the Supplemental Order, said log also to be supplied by April 16. By **APRIL 16**, Attorney Siegel must bear the burden to bring a motion for protective order before Magistrate Judge Maria-Elena James to justify withholding of any privileged material. The burden to obtain wholly private information, however, shall be on plaintiffs.

(Dkt. #101 at 7-8.) Finally, in its TRO, the Court set deadlines relating to the preliminary injunction hearing. Particularly, the Court set the deadline for Plaintiffs' opening memorandum in support of their motion for preliminary injunction at June 1, 2009.

    The Court now turns to the parties' disputes.

### III.  DISCUSSION

**A.  Defendants' Assertion of Attorney-Client Privilege**

    The first dispute between the parties involves whether Defendants have a valid basis to withhold materials from production based on attorney-client privilege. Defendants contend that their communications with UHW counsel regarding prior litigation with Plaintiffs are protected by attorney-client privilege and therefore shielded from production. Plaintiffs, however, assert that the

3

attorney-client privilege with respect to Defendants' communications with UHW's outside counsel during the time that Defendants were leaders of UHW resides with UHW, or more precisely at this point in time, its trustee. The Court agrees with Plaintiffs.

Initially, the Court notes that the number of documents that Defendants contend are protected by attorney-client privilege has substantially decreased since Defendants first raised this issue in their April 16 Motion for Protective Order. At that time, defense counsel indicated that, based on the number of documents they had received from Defendants, they had only been able to complete a "preliminary assessment of whether [D]efendants can properly assert a privilege to their production." (Dkt. #124 at 3.) Defendants also indicated that, "[D]efendants' former attorneys at Morrison & Foerster possessed a substantial quantity of documents relating to that firm's former representation of defendants," which defense counsel had "not had the opportunity to review . . . or to determine whether defendants may properly assert a privilege as to them." (*Id.*)[1] In their May 17, 2009 Response brief, Defendants now indicate that they intend to turn over to Plaintiffs one thousand documents they previously withheld under the assertion of attorney-client privilege, but continue to assert the privilege as to three documents, which Defendants describe as follows:

> (1) Memorandum dated March 23, 2008, from attorneys Johnathon H. Siegel and Latika Malkani of Siegel and Lewitter to Dan Martin and John Borsos (both current defendants) of UHW concerning legal options available to individuals whose personal contact information was improperly obtained and utilized by Tyrone Freeman, the president of another Service Employees International Union (SEIU) local union, in the context of Freeman's efforts to secure the transfer of 65,000 UHW members to his local.  []

---

[1] As expressly stated in paragraph 4 of Judge Alsup's TRO, Defendants were given until April 16 to bring a motion for protective order "to justify withholding of any privilege material." Notwithstanding Defendants' failure to comply with other aspects of paragraph 4, Defendants' Motion for Protective Order simply requested that the Court "determine a schedule for the litigation of issues relating to the attorney-client privilege as it applies to documents in their possession." Defendants also requested an additional 30 days to prepare complete privilege logs and moving papers. Judge Alsup's directive could not have been clearer: in the motion for protective order, Defendants were required to "justify" their withholding of any privileged materials. Filing a motion that merely stated that defense counsel had yet to complete a review of the documents in their possession and requesting additional time to do so does not even come close to complying with Judge Alsup's instruction. In fact, not only did the Motion fail to identify which documents Defendants were withholding from production based on attorney-client privilege, it was devoid of any discussion of the legal authority supporting their assertion of such privilege. Accordingly, as an alternative to the ruling set forth in this Order, the Court finds that Defendants waived any arguments with respect to withholding documents based on privilege by failing to file to motion for protective order that substantively set forth the basis for any asserted privileges by the April 16 deadline.

4

> (2) Memorandum dated September 15, 2008, from attorney Johnathon H. Siegel of Siegel & Lewitter to the top leaders of UHW and other counsel retained by UHW concerning legal options available to respond to an anticipated effort by the SEIU to place UHW into trusteeship.  []
>
> (3) Memorandum, undated but presumed to be written in September 2008, from attorney Arthur Fox to the top leaders of UHW and other counsel retained by UHW concerning legal options and strategies available to respond to the notice by the SEIU that it would hold hearings to determine whether to place UHW into trusteeship.  []

(Dkt. #209 at 3-4.)

According to Defendants, "[d]espite the fact that these three documents were sent by counsel for the UHW to defendants who were then in the leadership of UHW, they should be protected from disclosure to the plaintiffs because they comprise confidential attorney-client communications to the defendants herein when they were engaged in disputes with the plaintiffs herein over the control and leadership of UHW and deal solely with issues relating to those disputes." (Dkt. #209 at 4.)  In support of this position, Defendants cite *Tekni-Plex, Inc. v. Meyner and Landis*, 674 N.E.2d 663, 671 (N.Y. 1996).  While the *Tekni-Plex* decision highlights the complexities involved with pinpointing who controls attorney-client privilege when entities change form and ownership, the Court finds that it is factually inapposite to the present dispute.  Specifically, *Tekni-Plex* traces the transition of the attorney-client privilege through a corporate merger, where a new entity assumed the operations (including the rights, obligations, and liabilities) of a predecessor corporation which was dissolved.  Here, in contrast, although UHW was placed into trusteeship, it is undisputed that UHW did not undergo any change in form, and certainly did not dissolve.  Rather, the *individual Defendants* left UHW to form a new, rival union, NUHW.  At no point did UHW surrender or otherwise transfer any of its operations to NUHW.  Thus, unlike the situation addressed in *Tekni-Plex*, where one entity was dissolved, and its operations were carried on by a successor entity, such that the successor entity also assumed the right to assert the attorney-client privilege with respect to communications

United States District Court
For the Northern District of California

concerning those operations, in this matter, only a change in management has occurred. *Tekni-Plex* therefore does not offer any support for Defendants' assertion of attorney-client privilege.[2]

Plaintiffs, on the other hand, proffer *CTFC v. Weintraub*, 471 U.S. 343 (1985), in support of their position that UHW controls assertion of the attorney-client privilege over Defendants pre-trusteeship communications with counsel. In *Weintraub*, the Supreme Court addressed whether the trustee of a corporation in bankruptcy had the power to waive the debtor corporation's attorney-client privilege with respect to communications that took place before the filing of the bankruptcy petition. *Id*. at 345. The Court found that the trustee - not the debtor-corporation management, who retained virtually no management powers - controlled the corporation's attorney-client privilege. *Id.* at 353-54. While the scenario presented in *Weintraub* is also factually distinguishable from the instant matter, the Supreme Court did provide guidance which is instructive. In particular, in reaching its decision, the Supreme Court noted that:

> [W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current management, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

*Id*. at 349 (citations omitted). The Court finds this reasoning sound. Applying these principles to the instant dispute, once UHW's trustees took over control and management of UHW, they also assumed control over the assertion of UHW's attorney-client privilege with respect to communications between its elected leaders and its counsel, *including any communications between the individual defendants in their former roles at UHW and UHW counsel concerning the trusteeship or their opposition to it*. Defendants have therefore failed to meet their burden of establishing they are entitled to assert attorney-client privilege as to such communications.

---

[2]The Court has also reviewed the additional authorities that Defendants have cited, which follow the reasoning in *Tekni-Plex*, and finds them inapposite for the same reasons set forth above.

1   Accordingly, the Court **GRANTS** Plaintiffs' request to compel production of the three documents
2   enumerated in Defendants' May 17, 2009 Response brief.

3   Further, to the extent that Defendants are withholding other documents based on attorney-
4   client privilege, including the one thousand pages of documents Defendants identified in their May
5   17 Response, the Court **hereby ORDERS** Defendants to produce those documents to Plaintiffs by
6   **5:00 p.m. on May 22, 2009.**

7   The Court **FURTHER ORDERS** Defendants to produce by **5:00 p.m. on May 22, 2009**,
8   any materials in their possession containing communications between Arthur Fox and Defendants
9   while Defendants were at UHW.  Specifically, defense counsel indicated that Mr. Fox may have sent
10  defense counsel a CD containing such communications.  If Defendants do not, in fact, have that CD,
11  counsel shall filed a verified declaration stating, under penalty of perjury, that they do not have the
12  CD.

13  Additionally, the Court **ORDERS** that Defendants shall produce to Plaintiffs any documents
14  containing communications between Defendants and the law firm of Siegel and LeWitter while
15  Defendants were at UHW.  Defendants shall produce these documents to Plaintiffs by **5:00 p.m. on**
16  **May 22, 2009**, or file a verified declaration stating that they do not possess such documents.

17  **B.   Materials Withheld as Personal or Based on Privilege**

18  The next dispute before the Court concerns Defendants' withholding of materials based on
19  their assertion that they are personal or protected by other privileges.  Plaintiffs contend that "the 16
20  individual enjoined Defendants have, in their responses to the Court-ordered interrogatories, asserted
21  various 'privileges,' *other than the attorney-client privilege*, over a multitude of pre-trusteeship
22  documents that are *not* "personal" in nature; and the vast majority of those Defendants have
23  submitted nothing even remotely resembling a proper privilege log with respect to those
24  documents." (Dkt. #210 at 1.)  Plaintiffs further assert that "those few Defendants who identified at
25  least some specific documents in their logs have made it clear that they are withholding documents
26  that plainly are *not* "personal," are *not* subject to the attorney-client privilege, and *do* contain "UHW
27  information" as that term is defined in Judge Alsup's TRO[.]"  (*Id*. at 2.)  In particular, Plaintiffs
28  contend that Defendants have not produced any of the "shadow emails" that Defendants exchanged

7

prior to the trusteeship on their personal email accounts. Plaintiffs thus assert that, "[t]o the extent that those shadow emails are lumped together in the types of omnibus "2001-present" and "2006-present" log entries[], they have not been properly logged and there is no conceivable ground for withholding them from Plaintiffs. To the extent that Defendants have not even *referenced* those shadow emails in their omnibus log descriptions, then any 'privilege' over them . . . clearly has been waived." (*Id*.)

At the hearing, defense counsel avowed that Defendants have produced all UHW property and had only withheld private or otherwise privileged materials. However, when questioned about the broad categories of documents listed in Defendants privilege log and whether those groups of documents contained materials that belonged to UHW, defense counsel conceded that at least nine of the Defendants' individual logs were "vague" as to the documents being withheld. Examining the privilege log, several of the Defendants' entries group together communications spanning several months or even years into a single "communication" and list questionable privileges including, "right to privacy," "right to organize," "political beliefs," and "marital privilege." Because Defendants have not itemized the documents and specifically indicated document-by-document which are private and/or are covered by a valid, recognized privilege, Plaintiffs have effectively been inhibited from fashioning a motion to compel which specifically targets certain documents they believe they are entitled to obtain.

To remedy this situation, Plaintiffs request that the Court compel Defendants to produce the image files described in paragraph 3 of the TRO so that Plaintiffs can search for UHW property, in particular the "shadow emails." Defendants oppose this request on the ground that the image files contain substantial amounts of the individual Defendants' personal materials which Plaintiffs have no right to obtain or view.

The Court has carefully considered the privacy rights of the Defendants involved in this matter. However, it has also become apparent that over the course of the past month, Defendants have failed to comply with the discovery directives set forth in the TRO concerning production of materials and creation of privilege logs to detail private and/or privileged materials being withheld. Over thirty-five days have elapsed since the April 16th deadline for production of a privilege log that

8

details with at least some specificity what documents and materials Defendants are withholding because they are private or privileged materials. The log Defendants have produced falls far short of that requirement and highlights that Defendants have been unable to segregate out UHW materials from the Defendants' private materials. **Most notably, Defendants have not produced any of the shadow emails previously described in the Court's April 8 TRO.** Plaintiffs now have nine days remaining before their opening brief on their motion for preliminary injunction is due. The discovery and production deadlines set forth in the TRO were meant to allow Plaintiffs sufficient time to obtain the materials from Defendants so as to present to the Court their support for issuance of a permanent inunction. While Defendants' privacy interests in withholding their private materials are certainly strong, Plaintiffs' right to obtain materials belonging to UHW cannot be subverted by Defendants' deficient attempts to segregate the two categories of materials.[3] In an attempt to fairly and expeditiously resolve this dispute, the Court rules as follows:

1. Defendants shall produce to Plaintiffs a copy of the digital image files described at page 7, paragraph 3, of the TRO by **12:00 p.m. on May 26, 2009** (the "production deadline").

2. Defendants will have until the production deadline to perform a search of the image files and remove any information or files **created after January 27, 2009** from the copy of the digital image files to be produced to Plaintiffs' counsel. Defendants shall create a log describing <u>with reasonable specificity</u> the: (1) the type of document or file (e.g., email, letter, spreadsheet) removed; and (2) the date it was created. Defendants shall provide a copy of that privilege log to Plaintiffs and the Court by the production deadline. **<u>No other files or data shall be deleted.</u>**

3. Plaintiffs shall be allowed to consult with one technical expert to help them transfer the electronic information and set up a method for searching the material. The technical expert shall be subject to the same confidentiality requirements set forth in the protective

---

[3] While sorting through this material may have proven to be a difficult task for Defendants, Judge Alsup made it clear that, having created this scenario, Defendants bore the burden of undoing it:

> If defendants have commingled UHW property with their own personal property - such as by using their private PDAs to do UHW work - that is a problem of their own making and is no defense to having to return the UHW information and property. Although this order will provide an opportunity to sort the private material from UHW material, the main burden and cost of doing so should fall on those who commingled in the first place rather than on UHW.

(TRO at 4.)

9

order and shall also sign the protective order and execute a verified declaration as described in paragraph 4, below.

4. By **5:00 p.m., May 22, 2009**, the Plaintiffs shall file a proposed protective order indicating that the digital image files will be for Glenn Rothner, Jeffrey Demain, Jeff Vockrodt, and Plaintiffs' chosen technical expert's eyes only. These individuals shall execute a verified declaration stating, under penalty of perjury, that they will not copy, save, or otherwise disseminate any of the private materials on the digital images.

5. If in reviewing the digital images, Plaintiffs' counsel discovers materials they believe qualify as UHW property, as that term is defined in the TRO, Plaintiffs may print out a copy of the document. Plaintiffs' counsel shall create a log of all documents they believe are UHW property and have printed out during their review. The log shall describe with reasonable specificity: (1) the type of document or file (e.g., email, memorandum); and (2) the general subject matter of the document or file. Plaintiffs shall provide a copy of their log of printed documents to Defendants and the Court by **June 2, 2009 at 5:00 p.m.**

6. Plaintiffs shall not copy or otherwise duplicate the digital image files produced by Defendants and shall return the image files to Defendants no later than **5:00 p.m. on June 2, 2009**.

**C.     Defendants' Oral Request for a Stay**

At the hearing, Defendants requested a stay of the Court's rulings on the discovery disputes discussed herein. The Court **DENIES** Defendants' request.

**IT IS SO ORDERED.**

Dated: May 22, 2009

_____
MARIA-ELENA JAMES
United States Magistrate Judge

10