UNITED STATES DISTRICT COURT

Northern District of California

SERVICE EMPLOYEES INTERNATIONAL
UNION, *et al.*,

                Plaintiffs,

  v.

SAL ROSSELLI, *et al.*,

                Defendants.
_____/

No. C 09-00404 WHA (MEJ)

**DISCOVERY ORDER**

Pending before the Court are four discovery-related disputes. The first, as briefed in the parties' June 11, 2009 joint letter, concerns the scope of use of the parties' videotaped depositions. (Dkt. #295.) The second dispute, as briefed in the parties' June 12, 2009 joint letter, concerns documents that Plaintiffs withheld from production based upon assertion of the attorney work product doctrine. (Dkt. #296.) Additionally, there are two issues that are carried over from earlier discovery disputes. Specifically, in a pair of letters dated June 3 and 4, 2009, Plaintiffs request that the Court sanction Defendants for defense counsel's failure to timely turn over a compact disc ("CD") in compliance with the Court's May 22, 2009 Discovery Order. Finally, in their June 19, 2009, Plaintiffs detail an on-going dispute regarding information missing from the electronic files Defendants produced to Plaintiffs on two hard drives pursuant to the Discovery Order. The Court will address each issue, in turn.

**1.    Dispute Concerning Use of Videotape Depositions (Dkt. #295.)**

The first dispute between the parties centers on the extent to which Defendants may use the videotaped depositions previously taken in this matter. Defendants indicate that they "wish to use the videotaped depositions to make their case in the court of public opinion about the exaggerated nature of the claims against them and the paucity of the evidence so far amassed so that California

healthcare workers can decide for themselves what merit lies behind [P]laintiffs' claims." (Dkt. #295 at 1-2.)

Plaintiffs, on the other hand, urge the Court to limit Defendants' use of the videotape depositions to this proceeding. They argue that, because the videotapes are not judicial documents, they are not entitled to a presumption of public access. Further, they contend that, "given that the transcripts of the depositions are available, there is no legitimate reason that the videotapes are needed beyond this proceeding." (*Id*. at 5.) Plaintiffs also argue that Defendants have previously shown their willingness to misuse these proceedings in an attempt to gain an unfair advantage in the political struggle between the rival unions. They therefore urge the Court to order that the videotapes of depositions may not be used for any purpose other than in this proceeding.

After carefully considering of the parties' arguments and supporting authorities, the Court finds that Plaintiffs have shown good cause to limit the scope for which Defendants may use the videotapes. The Court therefore **GRANTS** Plaintiffs' request for a protective order prohibiting Defendants from using the videotapes of the depositions taken in this matter for any purpose outside of this lawsuit. The Court notes that this ruling applies strictly to the videotapes and does not affect Defendants' use of the deposition transcripts.

**2.     Defendants' Request to Compel Production (Dkt. #296)**

The second dispute between the parties concerns Defendants' contention that Plaintiffs wrongfully withheld certain documents from production.[1] Defendants state that on May 22, 2009, Plaintiffs produced a privilege log listing 263 items that Plaintiffs asserted were protected under attorney work-product doctrine. According to Defendants, "[t]he vast majority - 231 - concern

---

[1] The parties filed their joint letter detailing this dispute on Friday, June 12, 2009. In the letter, Defendants indicated that they sought the documents for inclusion in their Opposition to Plaintiffs' Motion for Preliminary Injunction, which Defendants had to file on Monday, June 15, 2009. Given the fact that Defendants believed the documents contained information critical to their Opposition, it is unclear why Defendants waited until the day before their brief was due to bring this matter before the Court. The undersigned therefore echoes Judge Alsup's advice to the parties that discovery disputes should be submitted to the Court will sufficient time for the Court to consider the parties' written arguments and set oral argument, if necessary. (*See* Dkt. #336.)

2

communications [] between the two forensics teams [P]laintiffs hired." (Dkt. #296 at 1.) In particular, Defendants identify a subset of those documents, which Defendants characterize as being between one of Plaintiffs' forensic teams, Modus, and Plaintiffs' key computer witness, SEIU staffer Bob Hauptman, regarding deletion of digital "items" by the individual Defendants. Defendants generally argue that: (1) the documents are not privileged because Plaintiffs did not hire the forensics teams solely to consult with Plaintiffs as required by Federal Rule of Civil Procedure 26(b)(4)(B); (2) Plaintiffs waived any work product privilege by disclosing the work of the forensics teams at deposition and in their Motion for Preliminary Injunction; and (3) exceptional circumstances exist overriding the asserted privilege. They therefore urge the Court to order Plaintiffs to produce these documents, or alternatively, for the Court to undertake an in-camera review of the documents.

Plaintiffs, however, maintain that Defendants have failed to show any basis warranting production of the documents. First, Plaintiffs assert that Defendants have not made a showing that disclosure is warranted because Defendants have not shown that they have a substantial need for the work product documents in order to uncover facts regarding the electronic data at issue in this action, or that alternate means for eliciting the same information, for example, by deposition, would entail undue hardship. Second, Plaintiffs maintain that they did not waive the work product privilege. They argue that "[b]ecause of his background in information technology and his familiarity with the issues in this litigation, Mr. Hauptman assisted the [P]laintiffs' litigation team in developing their priorities and strategies for electronic data review." (Dkt. #296 at 5.) Because the work product doctrine includes documents prepared by a party, as well as the party's attorney, Plaintiffs assert that Mr. Hauptman's assistance did not result in a waiver of the work product privilege. Plaintiffs further argue that, even if they disclosed underlying facts at depositions and declarations or a particular work product document, that does not waive the assertion of the privilege. Finally, Plaintiffs argue that they hired the forensic experts to restore and upload data and make it available to the litigation team for targeted searches. Thus, the forensic experts' work was strictly for purposes of litigation.

3

The Court has considered the foregoing arguments and agrees with Plaintiffs that Defendants have failed to demonstrate that the work product privilege does not apply to the documents or that Plaintiffs waived the privilege. Further, the Court finds that Defendants have not made a sufficient showing of substantial need or undue hardship to justify an order compelling production of the documents. Accordingly, the Court **DENIES** Defendants' request to compel production of the withheld documents and their request for an in-camera review of the documents by the Court.

**3.      Plaintiffs' Request for Sanctions Against Defendants (Dkts. ##285, 289, 308, 311)**

On June 3, 2009, Plaintiffs submitted a letter to the Court regarding Defendants' alleged non-compliance with the Court's May 22, 2009 Discovery Order. Specifically, Plaintiffs asserted that Defendants failed to turn over to Plaintiffs a CD containing communications between Arthur Fox and the individual Defendants. That Order directed Defendants to produce the CD by 5:00 p.m. on May 22, 2009, or to file a declaration stating that they did not possess any such CD. According to Plaintiffs, despite the fact that Defendants' counsel had received the CD from Mr. Fox by at the latest May 29, Defendants did not produce the CD until June 3, 2009 - two days after Plaintiffs' Motion for Preliminary Injunction was due. As a result, Plaintiffs assert that Defendants' delay prevented them from using the Fox documents in drafting their Motion. Plaintiffs further contend that although Defendants' counsel indicated in his Declaration that Defendants did not have the CD, defense counsel did not inquire as to whether their clients possessed the CD or the documents purportedly contained on the CD. Additionally, Plaintiffs state that, despite the fact they informed defense counsel that the documents on the CD constituted attorney-client communications, defense counsel nevertheless reviewed the items on the CD.

In response, Luis Fuentes, counsel for Defendants, maintains that he complied with the Court's directive by looking for the Fox CD and filing a Declaration indicating that he did not have it. Mr. Fuentes further argues that Plaintiffs suffered no prejudice because Judge Alsup granted them leave to file the Fox documents. Finally, Mr. Fuentes asserts that Plaintiffs' counsel and Mr. Fox placed Siegel & Yee in the middle of their dispute over the CDs by delivering them to Siegel & Yee. As a result, he contends that, as defense counsel, he and Mr. Siegel had a "duty and ethical

4

obligation to protect our clients' legal interests," by reviewing the CDs to ensure that they did not contain materials dated after January 27, 2009, or materials that were not subject to disclosure.

The Court has carefully considered the parties' argument as presented in their letters, and the information counsel provided during oral argument. While the parties dispute whether defense counsel possessed the Fox CDs at the time Mr. Fuentes filed his Declaration on May 22, it is undisputed that, at the latest, defense counsel obtained the Fox CDs by May 29th. Notwithstanding defense counsel's belief that they were ethically obligated to review the contents of the CDs to confirm that the materials were subject to the Discovery Order, defense counsel fails to proffer any explanation as to why it took over three days for counsel to complete this task and turn the CDs over to Plaintiffs. However, because Plaintiffs were permitted to supplement their brief with the Fox documents, Plaintiffs were not ultimately prejudiced. Although defense counsel's delay definitely skirts the line with respect to sanctionable conduct, the Court declines to impose sanctions. Accordingly, Plaintiffs' request to impose sanctions is **DENIED**.

**4.    Dispute Regarding Information Omitted from Electronic Files (Dkt. #311.)**

The final issue arises in connection with Plaintiffs' request for imposition of sanctions against Defendants and concerns the manner in which Defendants produced the electronic files identified in the Court's Discovery Order. Specifically, Plaintiffs contend that when Defendants produced over a million files on two hard drives, they omitted information regarding the source of the files, including from which individual Defendant the files were obtained and from what device they were extracted (*e.g.*, personal computer, cell phone, UHW BlackBerry, personal BlackBerry, etc.). Because Plaintiffs' designated technical expert was required to destroy the copy of the database he created from the external hard drives, Plaintiffs explain that, even if Defendants were to now provide information identifying the source of the files, there would be no way for Plaintiffs to match those identifications with the files that Plaintiffs were authorized to save as UHW property.

To remedy this problem, and as part of the sanctions Plaintiffs requested the Court impose against Defendants, Plaintiffs urge the Court to order Defendants to provide the external hard drives to a Special Discovery Master who, at Defendants' expense, will review and segregate out

Defendants' personal files and release the remaining files to Plaintiffs. Additionally, Plaintiffs request that "[t]he Court order Defendants thereafter to identify to Plaintiffs the source of each file contained in the production provided by the Special Discovery Master[.]" (*Id*. at 7.)

Because Plaintiffs raised this issue in their reply letter regarding their request for sanctions, Defendants have not had an opportunity to respond in writing. In order to expeditiously resolve this on-going dispute the Court **ORDERS** as follows:

1. By **September 2, 2009**, the parties shall meet and confer regarding this dispute.
2. If at that time the parties are unable to resolve the dispute, the parties shall file a joint letter **by September 4, 2009**, detailing their respective positions and setting forth any supporting legal authority. Concurrently, each party shall submit a separate letter for the Court's in camera review listing the names of five individuals, one of whom the Court will select to serve as a special master to review the hard drives and/or files at issue. The parties will be ordered to equally share the cost of the special master.
3. At the hearing on August 6, 2009, the Court indicated that it would set this matter for further hearing on August 27, 2009. Based on the rulings set forth above, the Court finds that additional oral argument at this juncture is unnecessary. If the parties are unable to work out a solution to this dispute, and proceed with the joint letter process, the Court will notify the parties at that time if oral argument is necessary.

**IT IS SO ORDERED.**

Dated: August 20, 2009

Maria-Elena James
Chief United States Magistrate Judge