United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION; DAVID REGAN and ELISEO MEDINA, as trustees for SEIU UNITED HEALTHCARE WORKERS-WEST and fiduciaries of the SEIU UNITED HEALTHCARE WORKERS-WEST AND JOINT EMPLOYER EDUCATION FUND; SEIU UNITED HEALTHCARE WORKERS-WEST, an unincorporated association and fiduciary of the SEIU UNITED HEALTHCARE WORKERS-WEST AND JOINT EMPLOYER EDUCATION FUND; and REBECCA COLLINS, as a participant in the SEIU UNITED HEALTHCARE WORKERS-WEST AND JOINT EMPLOYER EDUCATION FUND<br><br>Plaintiffs<br><br>v.<br><br>SAL ROSELLI; JORGE RODRIGUEZ; JOAN EMSLIE; JOHN BORSOS; JOHN VELLARDITA; GABE KRISTAL; PAUL KUMAR; MARTHA FIGUEROA; BARBARA LEWIS; PHYLLIS WILLETT; DANIEL MARTIN; LAURA KURRE; RALPH CORNEJO; WILL CLAYTON; GLENN GOLDSTEIN; FRED SEAVEY; MARK KIPFER; AARON BRICKMAN; IAN SELDEN; GAIL BUHLER; FREJA NELSON; ANDREW REID; NATIONAL UNION OF HEALTHCARE WORKERS; MARYRUTH GROSS; JASON JOHNSON; PETER TAPPEINER; MARTI GARZA; EMILY GORDON; MICHAEL KRIVOSH; CONNIE WILSON; ARLENE PEASNALL; CHERIE KUNOLD; FAYE LINCOLN; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. C 09-00404 WHA<br><br><br><br><br><br><br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |

**INTRODUCTION**

In this action directed at wrongs allegedly committed by former officers of a parent union before quitting to form a competing union, the plaintiffs seek leave to file a second amended complaint to add the following:

1. New defendants Jason Johnson, Peter Tappeiner, Emily Gordon, Marti Garza, and Michael Krivosh due to their alleged involvement in the same type of misconduct as that allegedly committed by the current defendants;

2. A claim for conspiracy to breach fiduciary duties against the individual defendants;

3. A claim for aiding and abetting breach of fiduciary duties against defendants NUHW and three individual defendants; and

4. A claim for conversion of UHW property against defendant NUHW.

For the following reasons, plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

The facts of this case have been exhaustively set forth in previous orders issued in this case (*see, e.g.*, Dkt. Nos. 101, 335). Briefly, the United Healthcare Workers have been part of the Service Employees International Union since the 1930's. Following disagreements between the leaders of the SEIU and the leaders of the UHW, SEIU decided to place a trusteeship upon UHW, pursuant to the SEIU constitution, to commence on January 27, 2009. In the run-up to the trusteeship, UHW leaders girded themselves to resist a trusteeship and to orchestrate an "ungovernable" situation. Defendants established a shadow email system using personal PDAs, through which they discussed how to resist the imposition of the trusteeship and emailed UHW documents to personal accounts for further use. When the trusteeship was imposed on January 27, 2009, the individual defendants resigned from the union and immediately formed the National Union of Healthcare Workers, a new and competing labor association. They departed UHW offices, knowing that stewards and rank-and-file members had barricaded themselves inside to physically resist efforts by any trustee to take control. Those remaining

inside removed or destroyed countless UHW records, information, files, email messages, contact lists, and documents in storage.

The first amended complaint, filed on March 3, 2009, alleged that defendants removed and destroyed union property, misappropriated union proprietary information and trade secrets, and intimidated union employees choosing to remain loyal to UHW (Dkt. No. 12).[1] It further alleged that various defendants abused their positions as trustees of an ERISA training fund by engaging in self-dealing at UHW's expense in order to insulate themselves from accountability to UHW and evade the trusteeship provisions of the SEIU constitution.

A TRO issued on April 8, 2009 (Dkt. No. 101). It found that plaintiffs had established a likelihood of success on their Section 301 claim for breach of the union constitution and likely irreparable harm from the missing property. It ordered that defendants turn over wrongfully withheld property to plaintiffs. Defendants responded by invoking the attorney-client and other privileges to justify their continued withholding of plaintiffs' property. On May 22, 2009, Magistrate Judge Maria-Elena James issued an order finding that defendants had failed to sufficiently establish the alleged privileges (Dkt. No. 238). The order also granted plaintiffs' motion to compel production of numerous documents, including many that the TRO had ordered defendants to produce. On July 27, 2009, an order granting in part plaintiffs' motion for preliminary injunction was issued (Dkt. No. 335). This order confirmed the essential findings of the TRO and again emphasized the egregious nature of defendants' behavior — that in the weeks leading up to the trusteeship, defendants had deleted countless files on their UHW computers, copied voluminous UHW files (electronic and paper), and sent electronic files from their work email to their own personal email addresses before departing their posts. The order mandated that defendants turn over additional property to plaintiffs, preserve any UHW property in their possession, and remain subject to the TRO and subsequent orders regarding the imaging of electronic devices.

---

[1] Plaintiffs' misappropriation of trade secrets claim was dismissed in the order dated May 14, 2009 (Dkt. No. 193).

3

Plaintiffs now seek leave to file a second amended complaint, stating (Br. 2):

> [I]t is now clear that additional former officers and employees of UHW actively participated in Defendants' scheme in blatant disregard of their fiduciary obligations to UHW. Plaintiffs' investigation also makes clear that Defendant NUHW continues to wrongfully detain UHW property for its own use, and refuses to take appropriate action to return that property.

**ANALYSIS**

Federal Rule of Civil Procedure 15(a) establishes the rule that after a response to the complaint has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 15(a) applies until the expiration of the Court-established deadline for filing motions for leave to amend. The deadline to file such motions in this case was August 6, 2009 (*see* Dkt. No. 324), and plaintiffs' motion was timely filed. Granting leave to amend:

> [L]ies within the sound discretion of the trial court. . . . In exercising its discretion a court must be guided by the underlying purpose of Rule 15 — to facilitate decision on the merits rather than on the pleadings or technicalities. . . . Thus, rule 15's policy of favoring amendments to pleadings should be applied with *extreme liberality*.

*DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185–6 (9th Cir. 1987) (emphasis added).[2] Nevertheless, "leave to amend is not to be granted automatically." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). Rather, the district court "may in its discretion deny leave to amend due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, No. 06-35758, 2009 U.S. App. LEXIS 7025, at *65 (9th Cir. Feb. 10, 2009). In assessing these factors, all inferences should be made in favor of granting the motion. *Griggs v. Pace American Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

---

[2] Unless otherwise indicated, all internal quotations and citations within quoted text in this order have been omitted.

4

### 1. UNDUE DELAY.

The first factor in determining the propriety of granting leave to amend is whether plaintiffs unduly delayed in filing their motion. The motion is timely under the case management deadline for amendments. And, given that defendants have engaged in a process of destroying and withholding plaintiffs' property and potentially key evidence — the very behavior that gave rise to the TRO, the motion to compel, and the order granting in part plaintiffs' motion for preliminary injunction (Dkt. Nos. 101, 238, 355), it cannot be said that plaintiffs knew or should have known all of the new theories earlier in the case.

### 2. BAD FAITH.

The second factor in determining the propriety of granting leave to amend is whether leave is sought in bad faith. Actions that support a finding of bad faith include "attempt[s] to prolong meritless litigation by making repeated and baseless amendments to their complaint" or "evidence of wrongful motive." *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir. 1997). Defendants claim that plaintiffs' motion was made in bad faith because plaintiffs failed to plead sufficient facts to support breach of fiduciary duty and breach of contract as to the new defendants. Because this order does not agree with defendants' assertions, as will be shown, this order finds that plaintiffs' motion was not made in bad faith.[3]

### 3. REPEATED FAILURE TO CURE DEFICIENCIES BY AMENDMENTS PREVIOUSLY ALLOWED.

The third factor in determining the propriety of granting leave to amend is whether "the plaintiff has previously been granted leave to amend *and* has subsequently failed to add the requisite particularity to its claims." *Zucco Partners*, 2009 U.S. App. LEXIS 7025, at *66 (emphasis added). Defendants misinterpret this factor, stating only that: "A fifth factor is whether plaintiff has previously amended the complaint, in which case the court's discretion to deny leave to amend is particularly broad" (Opp. 2). That is not the complete rule. Even *Ascon*

---

[3] Although this order denies leave to amend as to plaintiffs' proposed claim for conspiracy, this order does not believe the conspiracy claim was made in bad faith; rather, we believe that plaintiffs simply misunderstood the law. Regardless, denial of one portion of the proposed second amended complaint does not prove that the entire second amended complaint is baseless.

5

*Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160–61 (9th Cir. 1989), the only supporting decision cited by defendants, concluded that a second motion for leave to amend was properly denied when a plaintiff was previously granted leave to amend but subsequently failed to cure deficiencies in the complaint. *Ascon Properties* did *not* hold, as defendants claim, that the mere fact of prior amendments, without more, is sufficient to deny leave to amend.[4] In sum, defendants have failed to show how plaintiffs have repeatedly failed to cure deficiencies in previously allowed amendments, and this factor is not met.

### 4. PREJUDICE TO DEFENDANTS.

The fourth factor in determining the propriety of granting leave to amend is whether granting leave to amend would prejudice the defendants. As a general rule, "[t]he party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 187. Defendants claim that leave to amend would prejudice them because allowing new claims and parties would necessitate additional discovery. Defendants cite *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983), which found that leave to amend would be prejudicial to defendants because "[t]he new allegations would totally alter the basis of the action, in that they covered different acts, employees and time periods necessitating additional discovery." That is not the situation presented here.

In the present case, the newly proposed claims arise from similar acts, many of the same defendants, and the same time periods alleged in the first amended complaint. Defendants complain about the prospect of "another round of injunctive relief motions" (Opp. 9), but that is unlikely given that the order of May 20, 2009, imposed the restriction that no new motions will be allowed without prior court approval (Dkt. No. 214). In large part, the issues tendered by the amendments that are allowed have already been in play in the TRO and preliminary injunction proceedings, and leave to amend will cause little prejudice to defendants.[5]

---

[4] This order notes that although defendants' opposition repeatedly (on the same page) cites to "fn. 3" in the *Ascon Properties* decision (Opp. 2), no such footnote exists.

[5] With the exception that the amendment to add a conspiracy claim is rejected below, for reasons unrelated to prejudice.

6

### 5. FUTILITY OF AMENDMENT.

The final factor is whether the proposed amendment would be futile. An "amendment should not be barred as futile if the underlying facts may be a proper subject of relief." *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 790 (9th Cir. 1963) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But the amendment must also be able to survive a motion to dismiss. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). The Supreme Court recently stated that:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is *plausible on its face*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasis added).

### A. STANDING.

Defendants say that as against the new defendants (Jason Johnson, Peter Tappeiner, Emily Gordon, Marti Garza, and Michael Krivosh), plaintiffs have no standing. To meet Article III's standing requirements:

> [A] plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–1 (2000).

#### (1) Injury in Fact.

Defendants claim that any alleged injury in the second amended complaint is conjectural, hypothetical, and/or speculative. This is untrue. Plaintiffs have alleged concrete injuries that are

likely to continue into the future in the absence of a favorable decision. For example, plaintiffs generally allege one such injury as follows:

> *Defendants' actions have, as intended, interfered with the ability of UHW to represent its members.* For example, in certain collective bargaining negotiations with employers, *UHW representatives have had to begin from scratch* to develop important costing information that UHW had paid for and developed prior to the trusteeship, but that was destroyed or hidden due to *Defendants' scheme to render UHW "ungovernable"*; and UHW representatives have also been forced to conduct negotiations and meetings with employers *without the benefit of valuable bargaining files* that were destroyed or taken due to that same scheme. Illustrative of the harm that UHW has suffered from the theft of those files is that, *in an important negotiation with a significant employer, UHW representatives were forced to rely on the word of the employer regarding what matters had been tentatively agreed upon prior to the trusteeship*.

(Second Amd. Compl. ¶ 5) (emphasis added). Plaintiffs need not state in the second amended complaint how *each* action of *every* individual defendant *uniquely* caused them injury, as defendants claim. Instead, plaintiffs need only set forth sufficient, general facts to characterize the injury as one that is concrete, particularized, actual or imminent, and fairly traceable to the acts of the defendant. *State of Oregon v. Legal Services Corp.*, 552 F.3d 965, 969–71 (9th Cir. 2009). Plaintiffs have met this burden.

Defendants state that plaintiffs have failed to plead facts that would establish concrete and actual or imminent harm as a result of the mere copying and transferring of UHW files for defendants' personal use. This is also incorrect. The second amended complaint provides several examples of how such misuse of plaintiffs' files have harmed and continue to harm plaintiffs (*see*, *e.g.*, Second Amd. Compl. ¶¶ 5, 72). Also, plaintiffs generally allege that:

> The Rosselli Defendants . . . us[ed] UHW resources and their positions as UHW officers or staff employees to plan and/or cause others to pursue disaffiliation, decertification, dues revocation, and/or formation of a new union at a time when these Defendants served as fiduciaries of UHW and LMRDA § 501(a) and the SEIU Constitution prohibited them from promoting those activities.

(*Id.* at ¶¶ 99, 116). Plaintiffs likewise proffer facts to show that this allegedly unlawful behavior harmed plaintiffs by helping to create a competitor union. Plaintiffs have sufficiently alleged the requisite type of injury.

8

### (2) Fairly Traceable to Defendants.

Defendants claim that while plaintiffs' *motion* makes specific allegations against new defendants Johnson, Tappeiner, Gordon, Garza, and Krivosh, plaintiffs fail to make specific allegations against these defendants in the *second amended complaint*. But defendants fail to acknowledge that the five new defendants are all listed in the second amended complaint under the heading of "Rosselli Defendants" (*id.* at ¶¶ 18–45). After presenting the 28 "Rosselli Defendants," the second amended complaint then makes general allegations against "the Rosselli Defendants" throughout the entirety of the document (*see*, *e.g.*, *id.* at ¶¶ 70, 71, 73, 75, 76). All specific factual allegations that defendants suggest are not made in the second amended complaint are in fact encompassed in plaintiffs' more general claims against the Rosselli Defendants (*see*, *e.g.*, *id.* at ¶¶ 99, 116, 134). As stated, general factual allegations such as these are sufficient to establish standing. *Legal Services Corp.*, 552 F.3d at 969.[6]

### (3) Redressability.

As to redressability, plaintiffs have clearly explained how a favorable decision would remedy their injuries — for example, such a decision would result in the return of plaintiffs' missing property, a permanent injunction restraining defendants from obstructing the trusteeship and improperly using plaintiffs' property, and a judgment against defendants to pay plaintiffs damages, among other remedies (Second Amd. Compl. 50–1). In sum, plaintiffs have standing to add all new claims and parties set forth in the second amended complaint.

### B. Plaintiffs' Proposed Claim for Conspiracy To Commit Breach of Fiduciary Duty.

Defendants correctly state that plaintiffs' proposed conspiracy claim is futile because civil conspiracy is only a theory of vicarious liability, not a separate, free-standing claim. In California:

> [T]he well accepted rule [is] that a civil conspiracy alone does not give rise to a claim on which damages may be allowed. . . . The utility of a civil conspiracy claim is that it permits a plaintiff to expand the number of persons who may be liable to him, under its doctrine that liability exists whether or not damage results from a

---

[6] This same reasoning applies to dismiss defendants' claim that "plaintiffs fail to plead facts supporting the breach of fiduciary duty and breach of contract claims" regarding the five new defendants (Opp. 4).

9

> person's direct action and regardless of the degree of his activity. *Consequently, if all persons, as here, were actors in committing a wrongful act, the charge of conspiracy is surplusage.*

*Tri-Tron International v. Velto*, 525 F.2d 432, 438 (9th Cir. 1975) (emphasis added). *Doctors' Co. v. Superior Court*, 775 P.2d 508, 510–11 (Cal. 1989), the only decision cited by plaintiffs regarding the scope of a civil conspiracy claim, is in accord.

The challenged claim alleges conspiracy to commit breach of fiduciary duty under California common law and the LMRDA against the Rosselli Defendants. But the wrongful acts underlying this conspiracy claim are already alleged against the Rosselli Defendants under plaintiffs' third and fifth claims for relief, and plaintiffs' conspiracy claim adds *nothing* to these claims. If the wrongful act is already fully set forth in another claim, "the conspiracy averment is *unnecessary* to the statement of a cause of action." *Unruh v. Truck Insurance Exchange*, 498 P.2d 1063, 1074 (Cal. 1972) (*overruled on other grounds by* Cal. Lab. Code § 3602) (emphasis added). Separately asserting conspiracy to commit the acts described in the third and fifth claims for relief is thus futile. Leave to amend to add plaintiffs' proposed claim for conspiracy to commit breach of fiduciary duty is **DENIED**.

### C. Plaintiffs' Proposed Claim for Aiding and Abetting Breach of Fiduciary Duty.[7]

Defendants state that plaintiffs' claim for aiding and abetting breach of fiduciary duty is futile because "[p]laintiffs fail to cite authority that recognizes a claim of aiding and abetting breach of fiduciary duties under the LMRDA, California Civil Code section 2322(c), or California common law involving union officers and/or employees" (Opp. 5). In California, the principles underlying the claim of aiding and abetting are as follows:

> Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial

---

[7] This order notes that both parties have somewhat meshed the legal principles underlying the aiding and abetting and conspiracy claims. Nevertheless, as a matter of law, plaintiffs' aiding and abetting claim is distinct from plaintiffs' conspiracy claim because "[u]nlike a conspirator, an aider and abettor does not 'adopt as his or her own' the tort of the primary violator. Rather, the act of aiding and abetting is distinct from the primary violation; liability attaches because the aider and abettor behaves in a manner that enables the primary violator to commit the underlying tort." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1134 (C.D. Cal. 2003). As a result, aiding and abetting is a claim unto itself rather than mere surplusage to plaintiffs' other claims for relief.

10

> assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.

*Casey v. U.S. Bank National Ass'n*, 26 Cal. Rptr. 3d 401, 405 (Ct. App. 2005). The intentional tort that plaintiffs allege is defendants' breach of the fiduciary duty owed to plaintiffs under the LMDRA, Civil Code 2322(c), and California common law. Defendants are correct that these laws do not speak to the act of aiding and abetting; instead, the laws address the *breach of fiduciary duty*. But the LMDRA, Civil Code 2322(c), and California common law need not speak to aiding and abetting in order for plaintiffs to assert their claim.

Contrary to defendants, moreover, California courts recognize claims for aiding and abetting breach of fiduciary duty. *See*, *e.g.*, *Casey*, 26 Cal. Rptr. 3d at 405–9 (finding that aiding and abetting breach of fiduciary duty is possible if the aider had knowledge that he or she was assisting a breach of fiduciary duty); *Neilson*, 290 F. Supp. 2d at 1137 (acknowledging a claim for aiding and abetting breach of fiduciary duty when the alleged aider and abettor owed an independent fiduciary duty to the plaintiff); *Safeway Stores, Inc. v. National Union Fire Insurance Co.*, 64 F.3d 1282, 1288 (9th Cir. 1995) (acknowledging that a third party could be liable for aiding and abetting Safeway's breach of fiduciary duty to its shareholders only if Safeway in fact breached such a duty); *Lomita Land & Water Co. v. Robinson*, 97 P. 10, 14–5 (Cal. 1908) (upholding a judgment for aiding and abetting a fraudulent land sale scheme).

Defendants claim that *Neilson* limited the holdings of several decisions with factual scenarios involving banks and trusts to "the particular trust context in which the respective cases arose" (Opp. 5). But the decisions cited above recognizing aiding and abetting breach of fiduciary duty in cases with various factual scenarios demonstrate that this order need not clarify the scope of bank and trust decisions. Importantly, defendants cite *no* authority stating that a claim for aiding and abetting breach of fiduciary duty is *not* legally cognizable in California. As stated, defendants simply challenge the applicability of some, but not all, supporting cases cited by plaintiffs. This is not sufficient to prove that plaintiffs fail to state a legally cognizable claim.

Defendants contend that none of the new defendants was an officer of UHW and thus these new defendants owed no fiduciary duty to UHW. But defendants cite no decisions

11

supporting this assertion, and plaintiffs have alleged sufficient facts to support the claim that since each defendant held leadership positions at UHW, each also owed fiduciary duties to UHW (Br. 6).

Finally, courts have recognized breach of fiduciary duty claims against union officers and/or employees under the LMRDA and California common law. *See*, *e.g.*, *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 374 n.16 (1990) (LMRDA); *Collins v. Winex Investments, LLC*, No. 08cv52-L(CAB), 2009 U.S. Dist. LEXIS 25553, *3–18 (S.D. Cal. Mar. 27, 2009) (California common law). Additionally, California Civil Code 2322(c) expressly recognizes a claim against "agents" who "[v]iolate a duty to which a trustee is subject under Section 16002, 16004, 16005, or 16009 of the Probate Code." Thus, defendants have failed to prove that such claims are not cognizable as a matter of law, and plaintiffs have sufficiently stated a claim for relief.

### D. Plaintiffs' Proposed Claim for Conversion.

Defendants state that plaintiffs' proposed common law conversion claim is "preempted" by the California Uniform Trade Secrets Act because the conversion claim is based on the same facts as those alleged in plaintiffs' dismissed claim for misappropriation of trade secrets. But in order "[t]o establish a violation under the [C]UTSA, it must be shown that a defendant has been unjustly enriched by the improper appropriation, use or disclosure of a 'trade secret.'" *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993). This order need not rule on whether the CUTSA supercedes common law claims for conversion of trade secrets because defendants have failed to prove that the challenged property constitutes "trade secrets." Indeed, "until it is shown that the information is entitled to trade secret protection, it is premature to rule whether [plaintiffs'] claims of conversion . . . are preempted under CUTSA." *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F. Supp. 2d 430, 437 (D. Del. 2003).

Defendants have likewise not addressed the order dated May 14, 2009, which dismissed plaintiffs' claim for misappropriation of trade secrets after finding that the challenged information did *not* constitute "trade secrets" (Dkt. No. 193 at 5–8). The May 14 order contradicts defendants' preemption argument. Defendants "cannot have it both ways" — they cannot both

12

claim on the one hand that material *is* a trade secret while arguing on the other that it is *not*. *Callaway Golf Co.*, 295 F. Supp. 2d at 437. In sum, defendants have failed to prove that plaintiffs' proposed conversion claim is preempted by the CUTSA, and this claim is neither subject to dismissal nor futile.[8]

### 6. PROCEDURAL OBJECTION.

It is true that the May 20, 2009, order required that no further motions be filed without prior court approval, obtainable only by filing a short précis outlining the proposed motion (Dkt. No. 214). This unusual step was taken to better manage the problem of a flood of motion practice by both sides. It is also true that no such application was made here. But subsequent to the May 20 order, a further case management order dated July 15, 2009, laid out further deadlines, one of which was that leave to amend must be sought by August 6, 2009 (Dkt. No. 324). This created enough ambiguity that counsel arguably acted in good faith in disregarding the requirement to file a précis as laid out in the May 20 order. So the current motion will be allowed. As to all future motions, however, this order reiterates that the précis procedure outlined in the May 20 order shall be followed, even as to motions like summary judgment alluded to by way of the deadline in the case management order  The reason is that all counsel have bombarded the docket with far too many motions, and the Court needs the assistance of counsel in restricting their motion practice to those issues that really matter.

---

[8] This order notes that defendants have not challenged the portion of plaintiffs' claim for conversion alleged under California Civil Code 3336.

13

**CONCLUSION**

For the above reasons, plaintiffs' motion for leave to file a second amended complaint is **GRANTED IN PART** and **DENIED IN PART**.  The new defendants must be served by **SEPTEMBER 30, 2009**, and all defendants against whom the new claims are asserted must respond to the new pleading by **OCTOBER 14, 2009**.  Any motion to dismiss must be pre-approved pursuant to the précis procedure.

**IT IS SO ORDERED.**

Dated:  September 17, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE