United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES INTERNATIONAL UNION, et al.,

Plaintiffs,

v.

SAL ROSELLI, JORGE RODRIGUEZ, et al.,

Defendants.

No. C 09-00404 WHA

**ORDER DENYING MOTION TO MODIFY PRETRIAL SCHEDULING ORDER AND LEAVE TO FILE AMENDED ANSWER**

## INTRODUCTION

In this action directed at wrongs allegedly committed by former officers of a parent union who quit to form a competing union, defendants move to modify the pretrial scheduling order and for leave to file an amended answer to plaintiffs' second amended complaint. Defendants specifically seek to re-assert the affirmative defenses of res judicata and collateral estoppel, which they included in their answer to plaintiffs' first amended complaint but removed from their answer to plaintiffs' second amended complaint. For the reasons that follow, defendants' motion is **DENIED**.

## STATEMENT

The facts of this case have been exhaustively set forth in previous orders issued in this case (*see, e.g.*, Dkt. Nos. 101, 335). Briefly, the United Healthcare Workers have been part of the Service Employees International Union since the 1930's. Following disagreements between the leaders of the SEIU and the leaders of the UHW, SEIU decided to place a trusteeship upon UHW,

pursuant to the SEIU constitution, to commence on January 27, 2009. In the run-up to the trusteeship, UHW leaders girded themselves to resist a trusteeship and to orchestrate an "ungovernable" situation. Defendants established a shadow email system using personal PDAs, through which they discussed how to resist the imposition of the trusteeship and emailed UHW documents to personal accounts for further use. When the trusteeship was imposed on January 27, 2009, the individual defendants resigned from the union and immediately formed the National Union of Healthcare Workers, a new and competing labor association. They departed UHW offices, knowing that stewards and rank-and-file members and barricaded themselves inside to physically resist efforts by any trustee to take control. Those remaining inside removed or destroyed countless UHW records, information, files, email messages, contact lists and documents in storage.

Before the present litigation began, two cases were litigated in the Central District of California involving some of the same defendants' alleged actions involving a sham non-profit entity known as the Workers' and Patients' Education Fund ("PEF"). In *SEIU v. Rosselli*, Case No. CV 08-2777, SEIU sued some of the same defendants as in the present matter including Sal Roselli, Jorge Rodriguez, Lori Whyman, Joan Emslie, David Shapiro, Stanley Lyles, Nancy Evans, Rosie Byers and Roy Chaffee for allegedly wrongly transferring at least three million dollars in funds under the control of the UHW to the PEF. SEIU asserted a claim for breach of fiduciary duty under the Labor-Management Reporting and Disclosure Act, a claim for violation of the SEIU and UHW constitutions under the Labor Management Relations Act, and various state law claims. It sought a constructive trust over the PEF under California law, an accounting of the UHW funds that were transferred to the PEF, a preliminary and permanent injunction to prevent defendants from disbursing or encumbering the monies held by the PEF, an order that defendants return the transferred funds, and attorney's fees and costs.

On July 22, 2008, a motion to dismiss was granted in Case No. CV 08-2777 on the grounds that SEIU, as a union, lacked statutory standing to assert its federal claims under the LMRDA and LMRA. No ruling was made on the merits of plaintiff's claims; the dismissal was

instead based solely on standing grounds. Final judgment was entered on July 31, 2008. Plaintiff SEIU filed a notice of appeal on August 8, 2008.

In *Collins v. Rosselli*, Case No. CV 08-3330, plaintiffs Michelle Collins and Yvette Hurston, neither of whom are in the present case, sued 25 defendants, including twelve defendants in the present case: Sal Rosselli, Jorge Rodriguez, Joan Emslie, Barbara Lewis, Laura Kurre, John Borsos, Will Clayton, Ralph Cornejo, Glenn Goldstein, Paul Kumar, Dan Martin and Fred Seavey. Case No. CV 08-3330 set forth a claim for breach of fiduciary duty under LMRDA Section 501(b) for the wrongful transfer of UHW funds to the PEF and for the potential use of UHW funds to pay for the defense of the suit. Plaintiffs sought an accounting of the funds transferred by UHW to the PEF and to the defendants' attorneys in that action, the return of those UHW funds transferred to the PEF or the defendants' lawyers that had not already been returned, injunctive relief to prevent the further expenditure of funds from the PEF and to prevent any expenditure of UHW funds for the defense of the case, declaratory relief, and attorney's fees and costs.

In the present action, the first amended complaint, filed on March 3, 2009, alleged that defendants removed and destroyed union property, misappropriated union proprietary information and trade secrets, and intimidated union employees choosing to remain loyal to UHW (Dkt. No. 12). It further alleged that various defendants abused their positions as trustees of an ERISA training fund, the SEIU-United Healthcare Workers-West Joint Employer Education Fund, by engaging in self-dealing at UHW's expense in order to insulate themselves from accountability to UHW and evade the trusteeship provision of the SEIU constitution. The Employer Education Fund is distinct and separate from the PEF. The first amended complaint did not mention the PEF.

On March 12, 2009, while the appeal of Case No. CV 08-2777 was pending and before there had been any adjudication of the merits in Case No. CV 08-3330, both actions were resolved (along with a third action, *Byers v. SEIU*, Case No. CV 08-3330) by a single settlement agreement (Dayan Decl. Exh. A). Plaintiffs in Case No. CV 08-3330 agreed to dismiss their action and plaintiff in Case No. CV 08-2777 agreed to withdraw its appeal. Although the

settlement agreement provided that both actions would be dismissed with prejudice, it also stated that "[n]o court has decided the merits of any of the cases" being settled by the agreement and that "[n]o party admits liability or fault with regard to the allegations of any of the complaints, and no party concedes the merits of any other party's defenses."

When defendants answered the first amended complaint in the present action on July 2, 2009, they asserted the affirmative defenses of res judicata and collateral estoppel but did not specifically refer to the PEF or the settled actions from the Central District as the basis for these defenses.

Plaintiffs timely sought leave to file a second amended complaint before the deadline set by the case management order. On September 17, 2009, their motion to add new parties and claims was granted in part and denied in part (Dkt. No. 391). In particular, plaintiffs were permitted to add new defendants Jason Johnson, Peter Tappeiner, Emily Gordon, Marti Garxa and Michael Krivosh due to their alleged involvement in the same type of misconduct as that allegedly committed by the then-current defendants. Plaintiffs were also permitted to add a claim for aiding and abetting breach of fiduciary duties against defendants NUHW and three individual defendants, and a claim for conversion of UHW property against defendant NUHW. The second amended complaint, like the first amended complaints, did not mention the PEF.

All defendants against whom new claims were asserted were required to respond to the second amended complaint by October 14, 2009. Defendants filed their answer two days late on October 16 (Dkt. No. 403). Unlike their answer to the first amended complaint, they failed to include the affirmative defenses of res judicata and collateral estoppel. Defendants' counsel Attorney Dean Royer has submitted a sworn declaration stating that he removed those affirmative defenses because he was not aware at the time he prepared the amended answer "of the factual allegations in prior litigation involving some of the same issues and parties as in this case, and therefore believed there was no factual basis for the defense" (Royer Decl. ¶ 2).

Defendants now contend that after they filed their answer to the second amended complaint, plaintiffs produced discovery responses revealed a "new focus" on defendants' transfer of funds to the PEF as "an important basis for plaintiffs' claims" (Br. at 3). Tellingly,

1  although their briefing is worded so as to leave a different impression, defendants do not actually
2  contend that they were unaware of plaintiffs' claims in the present action regarding the PEF until
3  these discovery responses were served, only that Attorney Royer (who prepared their answer to
4  the second amended complaint) was unaware of those claims at the time he prepared the answer.

Specifically, defendants' Interrogatory No. 18 requested that plaintiffs summarize the facts underlying their contention that defendants breached their fiduciary duties to UHW. On November 2, 2009, plaintiffs responded in part by stating that defendants' expenditure of UHW funds to pay the legal fees incurred in presenting a knowingly false defense to the PEF allegations in the trusteeship hearing in fall 2008 was a breach of their fiduciary duties.

In the expert report of plaintiffs' damages expert Michael J. Lasinski, which was produced to defendants on January 15, 2010, Lasinski states that one of his assumptions is that defendants engaged in a conspiracy to divert resources from UHW for the purpose of "degrading the capacity of UHW's trustees to govern UHW and to represent its members in the event of a trusteeship (collectively described as 'engaging in activities against the interests of UHW')" (Royer Decl., Exh. C).

Defendants' Interrogatory No. 1 asked plaintiffs to summarize the facts upon which they contended that defendants failed to turn over, removed, or destroyed UHW property as alleged in the complaint (Royer Decl., Exh. D at 4–7). In plaintiffs' interrogatory response served on January 20, 2010, plaintiffs allege that defendants' created and transferred funds to the PEF for the purpose of financing defendants' opposition to a potential trusteeship and used those funds to finance the shadow network system they used to resist the trusteeship. Defendants' Interrogatory No. 18 asked plaintiffs to summarize the facts upon which they contend that defendants breached their fiduciary duties to UHW under the LMRDA, thereby harming UHW or benefitting NUHW. Plaintiffs respond in part by discussing defendants' alleged misrepresentations at the trusteeship hearings in the fall of 2008 regarding the purpose of the PEF (Royer Decl., Exh. D at 31–34).

**ANALYSIS**

Defendants contend that because plaintiffs' disclosures were served after their amended answer, defendants should be allowed to file another amended answer reasserting the affirmative

defenses of res judicata and collateral estoppel. Pursuant to Federal Rule of Civil Procedure 16(b)(4), defendants must show good cause to modify the scheduling order.

Defendants have not shown good cause here. They have not been diligent in raising this defense in a timely manner. As noted above, defendants were aware of plaintiffs' claims in the present action regarding the PEF before these discovery responses were served, and in fact had asserted the affirmative defenses of res judicata and collateral estoppel in their answer to the first amended complaint.

On the merits, these affirmative defenses are problematic. On the one hand, the settlement agreement stated that the federal claims raised in the Central District actions were dismissed "with prejudice." On the other hand, the settlement agreement contained no release, but did contain an express statement that no court had decided the merits of the matters. Plaintiffs' claims are not clearly barred by either issue nor claim preclusion in this instance.

Issue preclusion bars the relitigation of issues actually adjudicated in previous litigation between the same parties. A party invoking issue preclusion must show (1) that the issue at stake is identical to an issue raised in the prior litigation, (2) that the issue was actually litigated in the prior litigation, and (3) that the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). Issue preclusion generally does not attach to a settlement agreement. *Cell Therapeutics, Inc. v. Lash Group, Inc.*, 586 F.3d 1204, 1211 (9th Cir. 2009).

Claim preclusion, often referred to as res judicata, bars any subsequent suit on claims that were raised or could have been raised in a prior action. Claim preclusion "applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties." *Id.* at 1212.

Certainly as to some defendants and plaintiffs, there can be no claim preclusion here because there was no identity between the parties. But even as to the parties that overlap between the present matter and the Central District cases, the legal effect of the "with prejudice" dismissal is inconclusive given the fact that there was no release and there was language that there was no decision on the merits.

6

Affirmative defenses encumbered by so many difficulties should have been timely raised so that the parties could have prepared in an orderly way to litigate the issues surrounding them. Therefore, although the affirmative defenses largely lack merit, to the extent that they might have merit, they are untimely under Rule 16(b)(4). Accordingly, defendants' motion to modify the pretrial scheduling order and for leave to file an amended answer to plaintiffs' second amended complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE