**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES INTERNATIONAL UNION, et al.,

    Plaintiffs,

  v.

SAL ROSELLI, JORGE RODRIGUEZ, et al.,

    Defendants.

No. C 09-00404 WHA

**ORDER GRANTING IN PART AND DENYING IN PART EDUCATION FUND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this labor action, plaintiffs sue several former officers of the local union after defendants were ousted from their positions and proceeded to form a new, competing union. The immediate issue concerns a dispute regarding a joint employer-employee trust fund, the SEIU United Healthcare Workers-West and Joint Employer Education Fund ("Education Fund"). Defendants Sal Rosselli, John Borsos, Laura Kurre, Ralph Cornejo, Will Clayton and John Vellardita in their capacities as trustees or former trustees of the Education Fund and defendant Mary Ruth Gross in her capacity as executive director of the Education Fund move for partial summary judgment in this matter. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

This case has been exhaustively set forth in previous orders (*see*, e.g., Dkt. Nos. 101, 335) and will only be summarized briefly here as required to address the present issues. Briefly, the

United Healthcare Workers have been part of the Service Employees International Union since the 1930's. Following disagreements between the leaders of the SEIU and the leaders of the UHW, SEIU decided to place a trusteeship upon UHW, pursuant to the SEIU constitution, to commence on January 27, 2009. In the run-up to the trusteeship, UHW leaders girded themselves to resist a trusteeship and to orchestrate an "ungovernable" situation. Defendants established a shadow email system using personal PDAs, through which they discussed how to resist the imposition of the trusteeship and emailed UHW documents to personal accounts for further use. When the trusteeship was imposed on January 27, 2009, the individual defendants resigned from the union and immediately formed the National Union of Healthcare Workers, a new and competing labor association. They departed UHW offices, knowing that stewards and rank-and-file members had barricaded themselves inside to physically resist efforts by any trustee to take control. Those remaining inside removed or destroyed countless UHW records, information, files, email messages, contact lists, and documents in storage.

The instant issue concerns only a small subset of defendants and claims in the larger litigation regarding these events. These concern the Education Fund, a collectively bargained "Taft-Hartley" fund governed by the Labor Management Relations Act. 29 U.S.C. 186(c)(6). The Education Fund's purpose is to provide employee training and education. It was created by a written trust agreement executed December 20, 2004, by UHW and two employers, Kaiser Permanente and Catholic Healthcare West.

Pursuant to the trust agreement, the fund was governed by a board of trustees. As originally constituted, the board consisted of six trustees: three appointed by the employers and three appointed by "the union," *i.e.* UHW-West. A subsequent amendment expanded the board to five trustees for each side. Defendants Rosselli, Borsos, Kurre, Cornejo, and Clayton were the incumbent employee trustees, and defendant Gross was the fund's executive director. On January 20, 2009, defendant Clayton resigned as a trustee and was replaced by defendant Vellardita.

The instant motion focuses on an amendment to the trust agreement's provisions governing the appointment and removal of employee trustees (the procedures for employer trustees was unaffected). Originally, the employee trustees were appointed by the "executive

2

officer" of the union. The "union," in turn, was identified as SEIU-UHW. The employee trustees were removable at any time, for any reason, by an instrument in writing signed by the executive officer of the union, *i.e.,* SEIU-UHW.

The trust agreement vested the fund's board of trustees with the authority to amend the trust agreement, albeit with certain limitations. On March 21, 2008, the trustees unanimously amended the trust agreement to alter the above-described appointment-and-removal scheme. The amendment lifted from the union the authority to appoint, remove and replace the employee trustees and vested that authority with the employee trustees themselves.

Plaintiffs contend that the amendment was invalid in various respects and was executed merely to insulate the incumbent employee trustees in anticipation of the UHW trusteeship. On January 27, 2009, as stated, SEIU imposed a trusteeship over UHW and appointed plaintiffs Medina and Regan to serve as trustees of the local union. Plaintiffs Medina and Regan sent a letter to the fund on January 27, and another on February 10, to remove the five incumbents from their positions as fund trustees.

Plaintiffs assert five claims against the Education Fund defendants including their first, second, third, fifth and eighth claims. In their first claim, they allege that the Education Fund defendants breached the SEIU constitution in violation of the Labor Management Relations Act Section 301 by disregarding the UHW trustees' directive removing defendants from their positions as fund trustees and by exceeding their authority by causing an improper amendment to the fund trust agreement to be adopted.

In their second claim, they allege that the Education Fund defendants breached fiduciary duties and statutory duties in violation of ERISA Sections 404(a)(1)(D), 404(a)(1)(A), 409 and 502(a)(3) by refusing to give effect to the instructions issued by plaintiffs Regan and Medina to remove them from their positions as employee trustees of the Education Fund, by refusing to give effect to the terms of the Fund's governing documents, by giving effect to the allegedly improper amendment, and by encouraging or permitting the Fund's staff and resources to be diverted to promoting a labor organization.

3

In their third claim, they allege that the Education Fund defendants breached fiduciary duties in violation of the Labor-Management Reporting and Disclosure Act Section 501(a) by causing the allegedly improper amendment to be adopted and by engaging in self-dealing by divesting UHW of its power to appoint and remove trustees and transferring that power to themselves.

In their fifth claim, they allege that the Education Fund defendants breached fiduciary duties owed to UHW in violation of California Civil Code § 2322(c) and California common law by acting in excess of an express limitation placed on their authority by the SEIU constitution when they caused the allegedly improper amendment to be adopted and by engaging in self-dealing by transferring the power to appoint and remove trustees to themselves.

In their eighth claim, they allege that the Education Fund defendants aided and abetted, participated in, and/or knowingly benefitted from breach of fiduciary duty in violation of California Code §§ 2223, 2224 and California common law by facilitating the improper use of the Education Fund to assist NUHW and to weaken UHW.

Defendants move for summary judgment on all these claims.

**ANALYSIS**

Summary judgment is granted under Rule 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F>3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Defendants assert that they are entitled to summary judgment on plaintiffs' first claim that they violated the SEIU constitution's provision that upon the institution of a trusteeship upon the local union, the trustee is authorized "to remove any . . . trustees of any funds selected by the

4

Local Union or affiliated body and appoint such . . . fund trustees during his or her trusteeship." SEIU Const., Art. 8, Section 7(a). Plaintiffs argue that defendants violated the SEIU constitution when they refused to vacate their positions as directed by UHW's trustees. Defendants contend that while the SEIU constitution grants the UHW's trustees power to remove fund trustees, it does not expressly mandate that the fund trustees resign. They also contend that because they were no longer union members at the time that the UHW's trustees removed them, they were no longer bound by the SEIU constitution. Finally, they argue that the SEIU constitution is a contract between the international and local unions and as such, the employee trustees were never parties to it and had no obligations to comply with it.

Plaintiffs argue that by accepting their positions as trustees of the Fund, defendants were bound to uphold the SEIU constitution. Plaintiffs argue that the SEIU constitution is essentially like a contract between UHW as the settlor of the fund and the trustees which can be enforced by the settlor against the trustees. But plaintiffs do not show that the SEIU constituion was a contract to which the trustees were parties. Nor do they cite to any evidence supporting their contention that defendants were bound to uphold the SEIU constitution by virtue of accepting their positions as trustees of the Fund. If the UHW as the settlor of the fund had wanted to make the SEIU constitution binding upon trustees of the fund as a condition of accepting their positions, it could have done so. In the absence of any evidence that they did so, summary judgment on plaintiffs' first claim is **GRANTED**.

Plaintiffs' second claim seeks invalidation of the March 2008 amendment on the ground that it was adopted in violation of terms in the Education Fund's governing document — the trust agreement — that restricts the trustees' amendment power, and that a purported amendment that violates a plan document's restrictions on the amendment power is enjoinable under ERISA. Article IX, § 1 of the trust agreement stated that "no amendment shall be adopted" which "[a]lters the basic principles of this Trust," "[c]onflicts with the terms of any collective bargaining agreement," or "[c]onflicts with . . . any applicable law or governmental regulation."

There is sufficient evidence to preclude summary judgment on plaintiffs' second claim. A reasonable fact-finder could conclude that the March 2008 amendment violated Article IX, § 1 of

5

the trust agreement because it was adopted for the purpose of insulating the trustees from removal, eliminating the settlor's ability to exert oversight and control over the trustees, and thereby altered the Education Fund's governance principles. The amendment was adopted in the midst of the larger struggle for control between the SEIU and the UHW leaders. There is evidence that the amendment was adopted specifically to prevent the SEIU from removing the incumbent employee trustees in the event that a trusteeship was imposed over UHW. For example, defendant Gross admitted at her deposition that there was a "connection" between the amendment and the dispute between the UHW and the SEIU. (Gross Dep. 86-87).

Plaintiffs also point to evidence that when the amendment was adopted, it was pushed through surreptitiously by the employee trustees so that the employer trustees would not realize that the amendment was designed solely to strip the SEIU-UHW of authority over the Education Fund. For example, defendant Gross sent an email instructing the Education Fund's executive assistant not to include the trust amendment in a packet sent to the employer trustees before the meeting where it was adopted (Dayan Decl., Exh. 3). One of the employer trustees, Cherie Kunold, stated in interrogatories that the employer trustees were unaware of the amendment's "political context" and that had she been aware of the full context, her decision to vote for the amendment would have been "materially affected" (Dayan Decl., Exh. 44).

Before the amendment, the trust agreement made the employee trustees accountable to an outside group — UHW — by vesting in UHW the power to appoint and remove employee trustees at will. The amendment placed that power in the hands of the trustees themselves. This arguably altered the basic terms of the trust in violation of Article IX, § 1.

Defendants argue that they had broad discretion under the trust agreement to amend the trust agreement, which stated that "[t]he provisions of this Trust Agreement may be amended, altered, or modified at any time, and from time to time, by the Board of Trustees. . ." They assert that the basic purpose of the Education Fund was education and training, and the amendment changing how trustees are appointed and removed do not alter those basic principles. Whether "basic principles" should be defined so narrowly, however, is an issue of fact that is sufficient by itself to preclude summary judgment on whether defendants violated the trust agreement.

6

**United States District Court**
For the Northern District of California

Plaintiffs' remaining claims all arise from defendants' alleged breach of fiduciary duty under ERISA, the LMRDA, and California law through engaging in self-dealing by giving the UHW's appointment power to themselves. Again, summary judgment is precluded. A reasonable fact-finder could conclude that defendants' conduct as trustees of the Fund violated defendants' fiduciary duties to the UHW by enacting the amendment changing the way that trustees were appointed. Defendants argue that they had benign and proper purposes for their actions, but whether they were acting in good or bad faith is an issue of fact for the jury. Summary judgment on these claims is simply inappropriate where plaintiffs have raised the sorts of issues of material fact surrounding defendants' conduct as described above.

**CONCLUSION**

For the foregoing reason, the Education Fund defendants' motion for partial summary judgment is **GRANTED** as to plaintiffs' first claim against them and **DENIED** as to all other claims against them.

**IT IS SO ORDERED.**

Dated: March 8, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE