IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES INTERNATIONAL UNION, et al.,

    Plaintiffs,

  v.

SAL ROSELLI, JORGE RODRIGUEZ, et al.,

    Defendants.

No. C 09-00404 WHA

**FINAL PRETRIAL ORDER**

## INTRODUCTION

This case shall go to a **JURY TRIAL** on **MARCH 22, 2010**, at **7:30 A.M.**, and shall continue until completed on the schedule discussed at the conference. The issues to be tried shall be those set forth in the joint proposed pretrial order except to the extent modified by order *in limine*. This final pretrial order supersedes all the complaint, answer and any counterclaims, cross-claims or third-party complaints, *i.e.*, only the issues expressly identified for trial remain in the case.

A final pretrial conference was held on March 8 and March 10, 2010. This order encapsulates the rulings on those motions heard during the final pretrial conference and rules on the other motions in limine on the papers.

Except for good cause, each party is limited to the witnesses and exhibits disclosed in the joint proposed final pretrial order less any excluded or limited by an order *in limine*. Materials or witnesses used solely for impeachment need not be disclosed and may be used, subject to the rules of evidence.

The stipulations of facts set forth in the joint proposed final pretrial order are approved and binding on all parties.

A jury of **10 PERSONS** shall be used.

Each side shall have **18 HOURS** to examine witnesses (counting direct examination, cross-examination, re-direct examination, re-cross examination, etc.). Opening statements and closing arguments shall not count against the limit. In setting this limit, the Court has carefully considered the witness summaries provided for the final pretrial conference. Counsel had been directed to specify for each witness all non-cumulative testimony. Conclusory and repetitive proffers were made instead. Counsel wholly failed to justify the lengthy time estimates requested. The Court nonetheless did the best it could with the information given. It also drew on its experience in presiding over cases of similar complexity and the Court's earlier 25 years in trial practice as a lawyer. Finally, the Court took into account the competing demands on the Court's calendar and the need to reduce the burden on the members of the jury who will decide the case. The limits are subject to enlargement but only on the "safety-valve" terms explained at the final pretrial conference.

The parties shall follow the Court's current *Guidelines for Trial and Final Pretrial Conference*, separately provided and available on the Internet at http://www.cand.uscourts.gov, which guidelines are incorporated as part of this order.

**PLAINTIFFS' FIRST MOTION IN LIMINE**

Plaintiffs move to exclude evidence of grievances between SEIU and defendants (ex-leaders of the UHW) that predated SEIU's decision to impose a trusteeship on the UHW. These grievances include (1) defendants' criticism of SEIU president Andy Stern's activities relating to the 2008 SEIU presidential election and book contract, (2) SEIU's criticism of defendants' positions on internal union matters including UHW's support of a labor organization in Puero Rico that was opposed to another labor organization affiliated with SEIU, (3) defendants' support for the California Nurses Association's involvement in SEIU representation elections in Ohio, (4) SEIU's criticism of UHW's then-leaders for being lax in organizing new members, (5) SEIU's criticism of UHW's then-leaders for not organizing workers outside of California, (6) SEIU's

2

1 criticism of UHW's then-leaders for being opposed to reaching agreements with employers, (7)
2 SEIU's criticism of defendant Rosselli for leaking information that resulted in a newspaper article
3 in 2007 in the San Francisco Weekly, (8) SEIU's intereference in UHW's collective bargaining
4 with Tenet Healthcare in 2007, (9) SEIU's support for the California nursing Home Alliance and
5 negotiations with employers without UHW's knowledge, resulting in employers being neutral in
6 organizing drives and newly-organized employees receiving lower wages, (10) SEIU's institution
7 of coordinated collective bargaining between three of its locals and Catholic Healthcare West,
8 (11) SEIU's actions with respect to the California State Council, an affiliation of California SEIU
9 locals, including removing defendant Rosselli as head of the council, and (12) defendants'
10 criticism of SEIU's leadership's general reputation and integrity.

11 Because the grievances leading to the schism between the SEIU and defendants are
12 peripheral to the issues to be decided in this trial, allowing these disputes to be litigated at length
13 here would tend to confuse the jury as to what is actually at issue in this action and would result
14 in undue delay and waste of time. For this reason, plaintiff's first motion in limine is **GRANTED**
15 with the caveat that some limited background information regarding the schism will likely be
16 appropriate as background information for the jury.

**PLAINTIFFS' SECOND MOTION IN LIMINE**

18 Plaintiffs move to exclude all evidence relating to defendants' allegations that SEIU's
19 internal decisions to institute a trusteeship over UHW and to consolidate long-term care workers
20 in California into a single local union were made in bad faith to retaliate against them. Plaintiffs
21 argue that because defendants have not brought any claims challenging the trusteeship or
22 jurisdiction decisions as taken in bad faith, such evidence is irrelevant to the issues to be decided
23 at trial, namely, whether defendants took steps to create a rival organization to compete with
24 UHW and worked to undermine and weaken UHW while still employed in leadership positions at
25 UHW.

26 Defendants counter that their oppositional activities and expenditures were authorized by
27 the local union's membership, not for personal benefits, and that the evidence plaintiffs seek to
28 exclude should be admitted to establish that defendants reasonably and in good faith opposed

3

1  SEIU's decisions as unjustified and antagonistic to the interests of the membership and the local
2  union. Defendants argue that this evidence demonstrates that they fulfilled their fiduciary duties,
3  rather than violated them.

4  Plaintiffs may not seek recovery of money damages prior to January 1, 2009, except to the
5  extent that defendants' activities sought to create a rival organization to compete with UHW
6  while still employed in leadership positions at UHW, worked to sabotage UHW while still
7  employed in those leadership positions. They will possibly be permitted recovery for defendants'
8  presentation of knowingly false evidence in the trusteeship hearing in the fall 2008 and acts to
9  publicize those statements to UHW members. Plaintiffs may not recover for defendants' lawful
10 activities resisting the jurisdiction and trusteeship activities, even if such activities had a dual
11 purpose of undermining the UHW.

12 To the following extent, plaintiffs' second motion in limine is **GRANTED**. The jurisdiction
13 and trusteeship decisions of SEIU will not be relitigated, and will be presumed correct and
14 unchallenged. Defendants' actions before January 1, 2009, will be admissible to show the
15 existence of a conspiracy or scheme to violate plaintiffs' property rights, although plaintiffs will
16 not recover damages for activities prior to that date. In response, defendants will be allowed
17 within reason to explain their allegedly innocent motives for the alleged conspiratorial acts. This
18 will not be allowed to degenerate into a battle of grievances with the SEIU leadership. However,
19 where issues of intent must be proven, defendants will be allowed to testify that their intent was
20 not to violate the property rights of plaintiffs, but to legitimately and lawfully exercise rights.
21 The Court will rule at trial whether evidence will be admissible to show that defendants presented
22 knowingly false evidence in the trusteeship hearing in the fall 2008 and publicized those
23 statements to UHW members.

**PLAINTIFFS' THIRD MOTION IN LIMINE**

25 Plaintiffs seek to preclude defendants from alleging that "other individuals" within SEIU's
26 affiliated entities were corrupt, including leaders of SEIU and its locals. Plaintiffs argue that
27 these allegations are irrelevant to the issues to be decided in this trial because even if they are
28 true, they would not excuse defendants' alleged misconduct. Defendants argue that they do not

4

seek to present evidence of corruption within SEIU for the purpose of causing unfair prejudice to SEIU, confuse the jury or excuse their wrongdoing. Instead, defendants seek to demonstrate that a major motivation for their actions was the UHW membership's desire not to be moved into another local implicated in corruption. They also argue that evidence of the SEIU leadership's tolerance for corruption is relevant to impeach plaintiffs' witnesses who challenge defendants' alleged corruption.

These allegations of corruption are mostly peripheral to the issues to be decided at trial. To prevent the trial from degenerating into a battle of general grievances between the SEIU leadership and the ex-leadership of UHW, plaintiffs' motion is therefore **GRANTED** with the caveat that a limited amount the evidence may come in as general background and to show the motivations for defendants' actions opposing the jurisdiction and trusteeship decisions by the SEIU leadership. Further ruling on the admissibility of particular items of evidence will be decided question by question and item by item.

**PLAINTIFFS' FOURTH MOTION IN LIMINE**

Plaintiffs move to exclude evidence relating to defendants' allegations that when they were leaders of UHW, defendants negotiated better contracts for their members than the contracts negotiated by other SEIU locals or representatives. Plaintiffs contend that these allegations are irrelevant, confusing and speculative, and would unduly delay the trial if contested at length at trial. Defendants argue that they seek to introduce such evidence to support their claims that they did not breach their fiduciary duties to show that (1) a major factor in the dispute between SEIU and UHW was over contract negotiation strategy and UHW membership opposed SEIU's trusteeship which resulted from this dispute, (2) the contracts that defendants negotiated were a basis for the UHW membership's opposition to the transfer of its members to a new local, and (3) defendants spent a significant amount of time negotiating contracts, not opposing the imposition of the trusteeship or undermining the UHW.

For the reasons discussed above with regard to plaintiffs' other motions in limine, this evidence is mostly peripheral to the issues to be decided at trial. Plaintiffs' motion is therefore

5

1  **GRANTED** with the caveat that a limited amount the evidence may come in as general
2  background.

### PLAINTIFFS' FIFTH MOTION IN LIMINE

Plaintiffs move to exclude evidence regarding the results of representation elections involving UHW and NUHW that have been held after the trusteeship. They contend that this evidence is irrelevant to the claims at issue in this trial, is confusing and speculative, and would create a "sideshow" as the parties tried to put in context their respective wins and losses. Defendants argue that evidence of NUHW's election victories is relevant to show that plaintiffs did not suffer damages because the post-trusteeship UHW would have lost the elections even if defendants had not acted to sabotage it. Defendants also argue that evidence that NUHW has won elections and continued to negotiate contributions to the Education Fund rebuts plaintiffs' claims that defendants' actions harmed the Education Fund.

Evidence of post-trusteeship election results is irrelevant to plaintiffs' claims whether defendants abused their positions within UHW to set up a rival union or sabotage the UHW, and would not excuse such conduct in all events. Plaintiffs' fifth motion in limine is therefore **GRANTED**. Evidence of post-trusteeship elections shall not be admissible unless plaintiffs open the door to such evidence by referring to the election results in an unfair manner.

### PLAINTIFFS' SIXTH MOTION TO LIMINE

Plaintiffs move to preclude defendants from presenting evidence at trial regarding the personnel, methods and resources they used to obtain workers' signatures on decertification or deauthorization petitions during the early post-trusteeship from January 27 to March 31, 2009. Plaintiffs argue that defendants refused to answer questions regarding these activities in discovery. Plaintiffs sought to compel answers to these questions, but Chief Magistrate Judge James — to whom discovery was referred in this action — refused to grant relief on the grounds that the information sought was not relevant (Dkt. No. 434).

Plaintiffs allege that during the post-trusteeship period, defendants used UHW's lists and databases of UHW members in their efforts to obtain workers' signatures on decertification and deauthorization petitions, to the detriment of UHW. Plaintiffs seek to preclude defendants from

6

denying this. In particular, plaintiffs want to prevent defendants from presenting evidence regarding the identities of the persons who gathered petition signatures, the identities of the persons to whom they reported, the identities of facilities in which they collected signatures, and how petitions were circulated.

In the deposition of defendant Barbara Lewis, defense counsel instructed her not to answer questions about (1) conversations she had immediately after the announcement of the formation of NUHW about the formation of NUHW, (2) the activities she engaged in for NUHW immediately after its formation, (3) discussions about her position in NUHW, (4) how many people were working at an NUHW office when she arrived for the first time a few months after the formation of NUHW, (5) conversations she had with the head of NUHW when she arrived at the office, (6) her work gathering representation petitions for NUHW, including the facilities to which those petitions pertained and the locations where the employees she contacted worked, (7) whether she had meetings and prepared written reports about this work, (8) the nature of her work with NUHW and (9) her compensation and benefits. In the deposition of Mark Kipfer, defense counsel instructed him not to answer who at a particular employer was gathering representation petitions. In the deposition of Brian McNamara, defense counsel instructed him not to answer who was supervising him at NUHW, whether he was keeping track of his progress on gathering petitions, and whether people at NUHW received progress reports on representation grounds.

Defendants successfully argued to Judge James that questions about defendants' conduct after imposition of the trusteeship were irrelevant to the issue of their behavior prior to the imposition of the trusteeship. They disputed plaintiffs' assertion to Judge James that these answers were probative of whether defendants were using materials stolen from UHW and whether they had engaged in pre-trusteeship preparation to form a rival union and sabotage UHW. Defendants also argued that the information sought by plaintiffs described above was privileged under the Labor Management Relations Act.

Defendants now argue that plaintiffs' motion should be denied because plaintiffs did not move for reconsideration of Judge James's determination that the materials were relevant. However, having avoided disclosing in discovery the materials sought by plaintiffs regarding

7

defendants' post-trusteeship activities on grounds of relevancy, it would be unfair sandbagging to allow defendants to now assert those same materials as a defense to plaintiffs' claims. Defendants cannot and do not argue that the scope of plaintiffs' claims have changed since that discovery dispute in December 2009, or any other reason why these materials are now suddenly relevant when before they were supposedly irrelevant. For these reasons, plaintiffs' sixth motion in limine is **GRANTED**. Defendants may not introduce evidence regarding NUHW's activities after January 28, 2009, that was withheld during the depositions of defendants Lewis, Kipfer and McNamara.

**DEFENDANTS' FIRST MOTION IN LIMINE**

Defendants move to exclude plaintiffs' evidence in support of their state law claims relating to defendants' conduct that is arguably protected or arguably prohibited under the National Labor Relations Act and the Meyers-Milias-Brown Act, including: (1) defendants' alleged removal, destruction and failure to turn over UHW property, (2) defendants' invasions of SEIU offices, (3) defendants' activities related to a workplace-organizing campaign including petitions for elections, (4) defendants' disaffiliation, decertification, dues revocation and formation of NUHW, and (5) defendants' collective bargaining.

Defendants specifically seek to preclude evidence in support of plaintiffs' allegations that defendant Tappeiner violated state law when he gave completed petitions for NLRB elections at Santa Rosa Memorial Hospital to a person not associated with UHW and that the original petitions were later destroyed. Plaintiffs contend that UHW devoted substantial resources to organizing at Santa Rosa Memorial Hospital, and that defendant Tappeiner instructed a subordinate to copy the Santa Rosa employee list and downloaded organizing files for the St. Joseph's Hospital System including Santa Rosa. Elections were subsequently held at Santa Rosa between NUHW and UHW.

Defendants' motion as to defendant Tappeiner's actions regarding Santa Rosa Memorial Hospital is **DENIED**. Plaintiffs shall not be allowed to seek recovery of direct costs of conducting the health care workers' election at Santa Rosa, but will be permitted to show defendants stole

8

1  membership lists and property and may seek damages for these claims other than for the cost of
2  elections.

**DEFENDANTS' SECOND MOTION IN LIMINE**

Defendants seek to exclude on issue and claim preclusion grounds evidence regarding claims or issues asserted in prior litigation, namely *SEIU v. Rosselli*, Case No. CV 08-02777, and *Collins v. Rosselli*, Case NO. CV 08-3330, both of which were litigated in the Central District of California. The prior actions asserted breach of fiduciary duty under the Labor-Management Reporting and Disclosure Act and breach of the SEIU constitution under the Labor Management Relations Act, based on allegations that defendants wrongly transferred about $3,000,000 UHW money to a Patient Education Fund.

On July 22, 2008, a motion to dismiss was granted in Case No. CV 08-2777 on the grounds that SEIU, as a union, lacked statutory standing to assert its federal claims under the LMRDA and LMRA. No ruling was made on the merits of plaintiff's claims; the dismissal was instead based solely on standing grounds. Final judgment was entered on July 31, 2008. Plaintiff SEIU filed a notice of appeal on August 8, 2008.

On March 12, 2009, while the appeal of Case No. CV 08-2777 was pending and before there had been any adjudication of the merits in Case No. CV 08-3330, both actions were resolved (along with a third action, *Byers v. SEIU*, Case No. CV 08-3330) by a single settlement agreement (Dayan Decl. Exh. A). Plaintiffs in Case No. CV 08-3330 agreed to dismiss their action and plaintiff in Case No. CV 08-2777 agreed to withdraw its appeal. The settlement agreement provided that both actions would be dismissed with prejudice and plaintiffs were paid $35,000 in satisfaction of their claims that defendants wrongfully transferred money to the PEF.

Plaintiffs, however, represent that they will not seek to collect the $3,000,000 again. Rather, they seek to introduce evidence regarding these issues in support of their claim that defendants conspired to present a fraudulent defense of the PEF allegations in the trusteeship hearings. On this basis, defendants' second motion in limine is **DENIED**.

**DEFENDANTS' THIRD MOTION IN LIMINE**

Defendants seek to preclude plaintiffs from introducing evidence for the purpose of showing that defendants violated their fiduciary duty to UHW pursuant to Section 501 through

10

activities they carried out with UHW resources in anticipation of the trusteeship that SEIU instituted over UHW. Defendants argue that these activities were protected by the LMRA, which protects members' right to organize, form, join or assist labor organizations to bargain collectively, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection.

Plaintiffs, however, represent that they will seek damages only for activities that defendants carried out with UHW resources for the purposes of forming a rival union to compete with UHW in the event of a trusteeship, and attempting to render UHW ungovernable in the event of a trusteeship, promoting through the use of paid UHW staff representatives a petition to disaffiliate UHW from SEIU, and undermining the jurisdiction decision after it had become final and binding on January 9, 2009, in the face of an IEB resolution accompanying that decision that prohibited the use of local resources to resist or undermine that decision. Plaintiffs state that they will ask the jury to award damages *only* for activities that the jury concludes had an improper purpose. For these reasons, defendants' third motion in limine is **DENIED**.

### DEFENDANTS' FOURTH MOTION IN LIMINE

Defendants move for an order excluding all evidence relating to plaintiffs' allegations and claims that defendants violated a fiduciary duty owed to the SEIU International. Plaintiffs, however, respond that they do not allege that defendants violated a fiduciary duty to the SEIU International, but only to the UHW. Accordingly, defendants' fourth motion limine is **DENIED AS MOOT**.

### DEFENDANTS' FIFTH MOTION IN LIMINE

Defendants move to exclude all evidence related to defendants' vicarious liability for the conduct of others who are not defendants including (1) the alleged theft of UHW property by others, (2) the alleged destruction by others of UHW documents and records, including the wholesale shredding of paper documents and the erasure of electronic documents, (3) the alleged conduct of others to prevent the trustees from gaining prompt access to UHW's buildings upon institution of the trusteeship, which allowed others to use, take and destroy UHW property and records housed in those building, (4) the alleged "misappropriation of UHW proprietary

11

membership databases, steward lists, organizing databases and other records, and the conversion of those databases, lists and records for use by other, and (5) the alleged institution of a concerted and widespread campaign of intimidation against employees who chose to work for UHW after the trusteeship, carried out by others through threats of physical violence against them, vandalizing their automobiles, and harassing and threatening anonymous phone calls.

Defendants allege that this evidence is irrelevant, would waste time, and would distract, inflame, or confuse the jury. Plaintiffs, however, respond that they are seeking to hold individual defendants *directly* liable for directing and facilitating others' conduct that harmed UHW, failing to satisfy their duties toward UHW as officers and representatives of UHW, and entering into a conspiracy to commit wrongdoing with the intent of harming UHW.

Whether defendants directed and facilitated others' wrongful conduct is an issue of fact for the jury that plaintiffs are entitled to try to prove. Defendants' fifth motion in limine is **DENIED**.

### DEFENDANTS' SIXTH MOTION IN LIMINE

Defendants move to exclude evidence of three incidents. In the first incident, defendants Vellardita, Kristal and Santos allegedly threatened a UHW staff member, Richard Rubio-Bowley, at his home on February 4, 2009, in order to frighten and intimidate him for continuing to support the UHW after the imposition of the trusteeship. In the second incident, defendants Vellardita, Kristal, Goldstein and Martin allegedly broke into an SEIU office in Alameda one week before the trusteeship was instituted, to steal records from that office. In the third incident, defendants Vellardita, Kristal, Goldstein and Martin allegedly broke into an SEIU office in Los Angeles a day after breaking into the Alameda office to steal documents and records including a list of UHW staff employees and analyses as to which employees were expected to work for and remain loyal to the UHW in the event of the trusteeship.

Defendants contend that this evidence is irrelevant, would waste time, and would distract, inflame and confuse the jury. Plaintiffs, however, argue that all three incidents are evidence of intimidation and harassment that is directly relevant to their claims that defendants Vellardita, Kristal, Goldstein and Seavey intended to weaken UHW and render it ungovernable in the event

12

1  of a trusteeship, in breach of their fiduciary duties to UHW. Plaintiffs also seek damages for their
2  increased security costs resulting from these incidents.

3  Plaintiffs may be able to use all three incidents to show motive, intent, or *modus operandi*
4  of defendants. At the pretrial conference, plaintiffs made a sufficient proffer to show that the
5  incidents regarding the break-ins at their offices in Alameda and Los Angeles led to increased
6  security costs for which they may seek damages at trial. Defense counsel admitted that
7  defendants pushed past security guards at the SEIU offices during these incidents, knocking them
8  down, and at a minimum created a disorderly ruckus. Plaintiffs were ordered to make a proffer
9  establishing how plaintiffs learned of the incident in which Rubio-Bowley was harassed and that
10 it was a causal factor leading to increased security costs.

11 Plaintiffs subsequently submitted a written offer of proof including the depositions of
12 Rubio-Bowley and Jerry Bullock, the principal of the private security contractor retained by
13 Bullock & Associates. Rubio-Bowley testified at his deposition that he reported the February 4
14 incident to his UHW director and to Bullock that same evening. Bullock testified at this
15 deposition that as a result of the incident, a security detail was assigned to protect Rubio-Bowly,
16 which continued after Rubio-Bowley subsequently received threatening phone calls. This
17 testimony is a sufficient proffer to support plaintiffs' contention that the incident increased their
18 security costs, and they may introduce evidence of the incident for that purpose. Defendants'
19 sixth motion in limine is **DENIED**.

20                    **DEFENDANTS' SEVENTH MOTION IN LIMINE**

21 Defendants seek to preclude plaintiffs from using a list of dozens of supposedly
22 "inflammatory terms." It is unfeasible for this order to rule on the propriety of these terms in the
23 abstract. Defendants' motion is therefore **DENIED** without prejudice to objecting during trial to
24 specific questions as argumentative. If, for example, a document written by a witness used the
25 term "ungovernable," then counsel would be proper in using the same term in questioning about
26 that passage. On the other hand, if terms like "extort" or "unlawful" were used in a stand-alone
27 question, unanchored from any foundation, that question would be objectionable as
28 argumentative. Counsel on both sides are well qualified and will follow the rules of evidence.

13

### DEFENDANTS' EIGHTH MOTION IN LIMINE

Defendants seek to exclude all evidence regarding their alleged destruction of electronic evidence on the grounds that they do not dispute that in good faith they cleaned their computers and UHW email accounts before the trusteeship was imposed. Defendants argue that their deletion of computer files was not done in anticipation of litigation and that there was no spoliation of evidence because UHW's IT department had back-up tapes of all the deleted data.

This evidence includes a memo by defendant Barbara Lewis in which she discusses making the UHW "ungovernable" in the event of a trusteeship. Defendants argue that this memo should be excluded because there is no evidence that it appeared on anyone else's computer or emails and therefore could not have been a "blueprint" for defendants' actions as plaintiffs contend. Defendants argue that the Lewis memorandum and evidence regarding their deletion of computer files are irrelevant and prejudicial.

Plaintiffs argue that the Lewis memorandum is relevant to their claims that defendants resisted trusteeship. They argue that defendants' destruction of electronic information is relevant to their claims that defendants breached their fiduciary duties to UHW and confidential information agreements with UHW by destroying UHW property in the form of electronic data.

Defendants' arguments explaining the relevancy (or lack thereof) of these materials go to their weight, not their admissibility. Accordingly, defendants' eighth motion in limine is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 16, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14