**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   UNITED HEALTHCARE WORKERS-WEST,
     et al.,
11
                    Plaintiffs,
12                                                        No. C 09-00404 WHA

13        v.

14   JOHN BORSOS, GAIL BUHLER, RALPH
     CORNEJO, JOAN EMSLIE, MARTI GARZA,
15   GLENN GOLDSTEIN, EMILY GORDON,
     JASON JOHNSON, MARK KIPFER, GABE         **FINDINGS OF FACT AND**
16   KRISTAL, MICHAEL KRIVOSH, PAUL           **CONCLUSIONS OF LAW**
     KUMAR, LAURA KURRE, BARBARA              **AFTER BENCH TRIAL**
17   LEWIS, DANIEL MARTIN, FREJA NELSON,
     ANDREW REID, JORGE RODRIGUEZ,
18   SAL ROSSELLI, FRED SEAVEY, IAN SELDEN,
     PETER TAPPEINER, JOHN VELLARDITA,
19   PHYLLIS WILLETT, AND NATIONAL UNION
     OF HEALTHCARE WORKERS,
20
                    Defendants.
21                                                    /

22        The recent trial included both jury and bench issues.  After the jury segment wherein the

23   evidence did double-duty, some supplemental evidence was received pertinent only to the bench

24   issues.  This order addresses the bench issues and constitutes the Court's findings of fact and

25   conclusions of law.  Although proposed findings were submitted and considered, this order has

26   found its own way and made its own findings rather than picking and choosing between the

27   competing versions.  Although a few have been, that a proposed finding has not been expressly

28   incorporated does not necessarily mean it has been rejected; rather, it means that this order has

1  found it unnecessary to adopt or reject it per se.  To the extent, however, that any proposed

2  finding was expressly admitted by the responding party in the recent round of proposals and

3  responses, this order hereby adopts the proposal (to the extent expressly admitted).  It is

4  unnecessary for this order to cite the record and it will not do so except as to particulars that

5  may assist the court of appeals.  No damage claim is asserted for the bench-trial issues.

6  Only declaratory and injunctive relief are sought.

## FINDINGS OF FACT

8    1.    At stake is control of the SEIU United Healthcare Workers West and Joint

9  Employer Education Fund.  The fund was established in 2004.  It is a California-based

10  Taft-Hartley fund, although no claim is based on the Taft-Hartley Act.[1]  The fund's charter was

11  the SEIU United Healthcare Workers West and Joint Employer Education Fund Trust Agreement,

12  Trial Exhibit 114.  It began:

> This Trust Agreement is made effective December 1, 2004, by and
> between United Healthcare Workers West (hereinafter referred to
> as "Union") and Kaiser Foundation Health Plan, Inc., a California
> nonprofit public benefit corporation, Kaiser Foundation Hospitals,
> a California nonprofit public benefit corporation, and The
> Permanente Medical Group, Inc., a California professional
> corporation (collectively "Kaiser Permanente"), and Catholic
> Healthcare West, a California nonprofit corporation (hereinafter
> referred to jointly in the singular as the "Employer").

18    The first recitals stated:

> 1.    The Employer is signatory to collective bargaining
> agreements with the Union, which provide that the Employer shall
> pay contributions under the terms of various collective bargaining
> agreements to the SEIU United Health Care Workers West
> Education Fund (hereinafter "Fund") at rates specified from time
> to time in said agreements.
>
> 2.    The parties have agreed that such contributions
> shall be payable to and be deposited in the Trust Fund created and
> established by this trust agreement.
>
> 3.    The purpose of this Trust Agreement is to provide
> for the establishment of such Trust Fund and for the provision of

---

[1] The criteria for a Taft-Hartley fund are set forth in 29 U.S.C. 186(c)(5): that the trust fund is established for the sole and exclusive benefits of the employees, that payments are made to the trust by employers, that there is a written agreement with the contributing employers, that "employees and employers are equally represented in the administration of such fund," and that there be a deadlock procedure.  These criteria are made applicable to a training fund, such as the education fund in question, by 29 U.S.C. 186(c)(6).

United States District Court

For the Northern District of California

1             any and all employee training and education benefits as may be
allowed by Internal Revenue Code Section 501(c)(9), and in
2             accordance with the terms of various collective bargaining
agreements and subscriber agreements.

3

         2.       Article II created the trust fund:

4

*Section 1.* There is hereby created the Trust Fund which shall
5             consist of all contributions required by the collective bargaining
agreements, memorandums of understanding, or subscriber
6             agreements to be made for the establishment and maintenance of
the Training Plan, and all interest, income and other returns
7             thereon of any kind whatsoever.

8         3.       Article III created the board of trustees and provided for selection and removal

9 of trustees. This article is much in play herein. In presenting these excerpts, italics are used

10 hereafter to highlight passages of particular importance. The original form of Article III

11 provided:

12            *Section 1.* The Trust Fund shall be administered by a Board of
Trustees which shall consist of six (6) Trustees. The three initial
13            Trustees representing the Employer shall be appointed in writing,
one by Catholic Healthcare West and two by Kaiser Permanente.
14            *The three initial Trustees representing the employees shall be
appointed by the Union by an instrument in writing signed by the*
15            *Executive Officer of the Union.* The Employer and the Union
expressly designate the Trustees jointly as named fiduciaries, who
16            shall have exclusive authority and discretion acting as the Board
of Trustees as herein provided, to control and manage the
17            operation and administration of the Trust Fund and the Training
Plan. Each of the Trustees expressly accepts designation as a
18            fiduciary and as Trustee by written acceptance and signature of his
Trust Agreement and assumes the duties, responsibilities, and
19            obligations of the Trustees as created and established by this Trust
Agreement and under applicable law. Any Trustee named
20            hereafter shall do likewise by signing the Trust Agreement or a
written acceptance thereof, in a form approved by and filed with
21            the Board of Trustees.

22                      *          *          *

23            *Section 5.* Any Employer Trustee may be removed from office at
any time, for any reason, by a writing signed by the employer who
24            appointed the Trustee and served on the Secretary of the Board of
Trustees. *Any Employee Trustee may be removed from office at*
25            *any time, for any reason, by an instrument in writing signed by the
Executive Officer of the Union and served on the Secretary of the*
26            *Board of Trustees.* The Secretary shall promptly notify in writing
the Trustees, including the Trustee being removed, and the
27            Employer and the Union.

28            *Section 6.* If any Trustee dies, resigns, or is removed from office,
*a successor Trustee shall be appointed forthwith by an instrument*

**United States District Court**
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1  *in writing signed by the appropriate Executive Officer of the*
2  *Union,* or the Employer which appointed the prior Trustee, as the
   case may be.

3  Therefore, as first embodied, Article III placed the selection and removal of the employee

4  trustees completely in the hands of the executive officer of the UHW.  The three employer

5  trustees, in parallel fashion, served at the pleasure of Kaiser Permanente and Catholic Healthcare

6  West.  Amendments later made to Article III will be addressed presently.

7           4.        Article IV listed the functions and powers of the board of trustees.  Although it

8  was lengthy, it included no power to appoint or remove trustees.  Subparagraph (k) provided that

9  the board was authorized:

10         [t]o construe the provisions of this Trust Agreement and the Plan
           and any such construction adopted by the Board of Trustees in
11         good faith which shall be binding upon any and all parties or
           persons affected thereby.
12
           5.        Article VII, entitled "General Provisions," included a notice
13
   provision:
14
           *Section 3.*  Any notice required to be given under the terms of this
15         Trust Agreement, the Training Plan, or the rules and regulations of
           the Board of Trustees shall be deemed to have been duly served if
16         delivered personally to the person to be notified, or if mailed in a
           sealed envelope, postage prepaid, or such person at his or her last
17         known address as shown in the records of the Trust Fund, or if sent
           by wire or other means of written communication to such person at
18         said last known address.

19         6.        Finally, Article IX entitled "Amendment and Termination" provided in relevant

20  part:

21         *Section 1.*  The provisions of this Trust Agreement may be
           amended, altered, or modified at any time, and from time to time,
22         by the Board of Trustees, including any amendments necessary to
           obtain and maintain the tax-exempt status of the Trust Fund and
23         the deductibility of the Employer contributions.  *All such
           amendments shall be in writing, and notice and a copy of the
24         amendment shall be furnished to the Union and the Employers;
           provided, however, that no amendment shall be adopted which:*
25
               *(a)  Alters the basic principles of this Trust or the Plan;*
26
               *(b)  Conflicts with the terms of any collective bargaining
27             agreement, memorandum of understanding and/or any
               applicable law or governmental regulation;*
28

4

**United States District Court**

For the Northern District of California

1    This amendment provision is also much in play herein, for the crux of the matter is whether a

2    disputed amendment violated the two prohibitions, italicized above.  This order eventually will

3    hold that the amendment in dispute violated both of these prohibitions.

4           7.      In December 2004, Sal Rosselli, the Executive Officer of the SEIU United

5    Healthcare Workers West Union, which will be referred to hereinafter as the UHW, appointed

6    the following as the employee trustees:

7                   •       Laura Kurre;

8                   •       John Borsos; and

9                   •       Ralph R. Cornejo.

10          8.      Thereafter, the size of the board was increased from six to eight and a provision

11   was added concerning death, resignation or removal by a trustee.  This was done by amending

12   Article III to state as follows (TX 115):[2]

13                  *Section 1.  The Trust Fund shall be administered by a Board of
                    Trustees which shall consist of eight (8) Trustees.  The three initial*
14                  *Trustees representing the Employer shall be appointed in writing,
                    one by Catholic Healthcare West and two by Kaiser Permanente.*
15                  *The three initial Trustees representing the employees shall be
                    appointed by the Union by an instrument in writing signed by the*
16                  *Executive Officer of the Union.  The fourth Trustee representing
                    the Employer shall be appointed in writing by the other three*
17                  *Employer Trustees after consultation with the Union Trustees.
                    The Employer and the Union expressly designate the Trustees*
18                  *jointly as named fiduciaries, who shall have exclusive authority
                    and discretion acting as the Board of Trustees as herein provided,*
19                  *to control and manage the operation and administration of the
                    Trust Fund and the Training Plan.  Each of the Trustees expressly*
20                  *accepts designation as a fiduciary and as Trustee by written
                    acceptance and signature of this Trust Agreement and assumes the*
21                  *duties, responsibilities, and obligations of the Trustees as created
                    and established by this Trust Agreement and under applicable law.*
22                  *Any Trustee named hereafter shall do likewise by signing the Trust
                    Agreement or a written acceptance thereof, in a form approved by*
23                  *and filed with the Board of Trustees.*

24                  Article III, Section 6 is amended as follows:

25                  *Section 6.  If any Trustee dies, resigns, or is removed from office,
                    a successor Trustee shall be appointed forthwith by an instrument*
26                  *in writing signed by the appropriate Executive Officer of the*

27          _____

28          [2] Oddly, while the amended Section 1 set forth how the fourth employer trustee would be selected, it
     omitted to say how the fourth employee trustee would be chosen.  This glitch became moot upon the next
     amendment, discussed in the text.

**United States District Court**
For the Northern District of California

*Union*, or the Employer which appointed the prior Trustee, or the Employer Trustees, as the case may be.

9. Thereafter, Article III, Section 1 was amended yet again to expand the board to ten (TX 436):

Article III, Section 1. The Trust Fund shall be administered by a Board of Trustee which shall consist of ten (10) Trustees, Two Employer Trustees shall be appointed by Kaiser Permanente, and one Employer Trustee shall be appointed by Catholic Healthcare West, and these three Employer Trustees shall appoint a fourth Employer Trustee to represent other acute care facilities, and a fifth Employer Trustee to represent the Long Term Care industry. *The five Trustees representing employees shall be appointed by the Union by an instrument in writing signed by the Executive Officer of the Union.*

10. From the foregoing, it is readily seen and this order so finds that a fundamental rule of governance of the trust fund was that the employers would appoint the employer trustees and "the union" — meaning the UHW (and more specifically its executive officer) — would appoint the employee trustees. This was because the trust fund was the product of collective bargaining negotiations between the UHW and Kaiser/Catholic Healthcare West. The UHW had every right to insist that the contributions it bargained for would be spent as approved by UHW appointees. All of the amendments to this time were fully consistent with this principle.

11. This brings us to the amendment in controversy. On March 21, 2008, the board of trustees adopted a further amendment to Article III, Section 1. It provided that the employee trustees would thenceforth be appointed *by a majority of the incumbent employee trustees rather than by the UHW*. In this way, the UHW was cut out of the appointment process and the incumbents were free to keep themselves or their friends or anyone else in office. By contrast, the employer trustees continued to be ultimately appointed by the employers (TX 1002).[3]

12. By this time, the five employee trustees were Sal Rosselli, John Borsos, Laura Kurre, Ralph Cornejo and Will Clayton. (Later, Will Clayton resigned and was replaced by John Vellardita.) All of these were closely allied with Sal Rosselli and were high in the

---

[3] Three were appointed by the two employers and, in turn, the three selected a fourth to represent acute-care facilities other than Kaiser and Catholic Healthcare West and a fifth employer trustee to represent the long-term care industry.

**United States District Court**

For the Northern District of California

1   leadership of the UHW in March 2008.  All of these are referred to herein as the "employee

2   trustee defendants" or the "incumbent employee trustees."

3         13.     The March 2008 amendment deserves to be quoted in full, although this order

4   will do so by chapters.  The lead-in was a set of recitals that summarized the three changes:

5           Pursuant to Article IX, Section 1, the Trustees of the SEIU United
        Healthcare Workers West and Joint Employers Education Fund

6           hereby amend the Trust Agreement, effective December 1, 2004,
        and thereafter amended, as follows:

7

8             1.   The sentence of Article III, Section 1,
        commenting "The five Trustees representing

9           employees . . . ." shall be deleted, and shall be replaced
        with the following sentence:  "The five Trustees
        representing the employees shall be appointed hereafter by

10          an instrument in writing signed by a majority of the
        employee Trustees."

11

12            2.   The first two sentences of Article III, Section 5
        shall be deleted and shall be replaced with the following

13          sentences:  "Any Employer Trustee may be removed from
        office at any time, for any reason, by a writing signed by
        the employer who appointed the Trustee, or by an

14          instrument in writing signed by a majority of the appointing
        trustees, and served on the Secretary of the Board of

15          Trustees.  Any employee Trustee may be removed from
        office at any time, for any reason, by an instrument in

16          writing signed by a majority of the employee Trustees and
        served on the Secretary of the Board."

17

18            3.   Article III, Section 6 shall be deleted in its
        entirety, and shall be replaced with the following new

19          Section 6:  "If any Trustee dies, resigns, or is removed from
        office, a successor Trustee shall be appointed forthwith by
        an instrument in writing signed by the appropriate

20          employee Trustees, or the Employer which appointed the
        Trustee, or the appropriate employer Trustees, as the case

21          may be."

22        14.     As noted, the employer side continued to be controlled (ultimately) by Kaiser

23  and Catholic Healthcare.  Only the employee side was affected by the March 2008 amendment.

24  The remainder of the March 2008 amendment then revised Article III as follows:

25          *Section 1.*  The Trust Fund shall be administered by a Board
        of Trustees which shall consist of ten (10) Trustees.

26          Two Employer Trustees shall be appointed by Kaiser
        Permanente, and one Employer Trustee shall be appointed by

27          Catholic Healthcare West, and these three Employer Trustees
        shall appoint a fourth Employer Trustee to represent other acute

28          care facilities, and a fifth Employer Trustee to represent the
        Long Term Care industry.  *The five Trustees representing the*

7

**United States District Court**

For the Northern District of California

*employees shall be appointed hereafter by an instrument in writing signed by a majority of the employee Trustees.* The Employer and the Union expressly designate the Trustees jointly as named fiduciaries, who shall have exclusive authority and discretion acting as the Board of Trustees as herein provided, to control and manage the operation and administration of the Trust Fund and the Training Plan.  Each of the Trustees expressly accepts designation as a fiduciary and as Trustee by written acceptance and signature of this Trust Agreement and assumes that duties, responsibilities, and obligations of the Trustees as created and established by this Trust Agreement and under applicable law.  Any Trustee named hereafter shall do likewise by signing the Trust Agreement or a written acceptance thereof, in a form approved by and filed with the Board of Trustees.

*Section 2.*  The Board of Trustees shall select one of their number to act as Chairman of the Board of Trustees and one to act as Secretary, to serve for such period as the Board of Trustees shall determine.  When the Chairman is selected from among the Employer Trustees, the Secretary shall be selected from among the Employee Trustees, and vice versa.

*Section 3.*  Each Trustee shall serve until his death, resignation, or removal from office.

*Section 4.*  A Trustee may resign at any time by serving written notice of such resignation upon the Secretary of the Board of Trustees, at least 30 days prior to the date on which such resignation is to be effective.  The Secretary shall promptly notify in writing the Trustees, and the Employer and the Union of such resignation.

*Section 5.*  Any Employer Trustee may be removed from office at any time, for any reason, by a writing signed by the employer who appointed the Trustee, or by an instrument in writing signed by a majority of the appointing trustees, and served on the Secretary of the Board of Trustees.  *Any Employee Trustee may be removed from office at any time, for any reason, by an instrument in writing signed by a majority of the employee Trustees and served on the Secretary of the Board.* The Secretary shall promptly notify in writing the Trustees, including the Trustee being removed, and the Employer and the Union.

*Section 6.*  If any Trustee dies, resigns, or is removed from office, a successor Trustee shall be appointed forthwith by an instrument *in writing signed by the appropriate employee Trustees,* or the Employer which appointed the Trustee, or the appropriate employer Trustees, as the case may be.

15.     This amendment was proposed by the incumbent employee trustees, particularly by Sal Rosselli (*see, e.g.*, TX 169 at 3460).  During the six-week run-up to the March 2008 amendment, all or most of the employee trustees, including beyond all doubt Sal Rosselli and

8

John Borsos, feared that the SEIU might soon institute a trusteeship over UHW.[4]  This was because Rosselli and other defendants were at war with the SEIU over the latter's plan to revamp the healthcare locals in California.  Rosselli and other defendants were free to speak out against the proposal but they were not free, if and when the proposal was enacted, to resist it.  If a trusteeship was imposed, the UHW (under a new trusteeship executive officer) could remove Rosselli and all other employee trustees.  As part of a more comprehensive plan to sabotage more broadly the ability of the SEIU trusteeship to function, the incumbents desired to lock themselves in control of the fund.  (The larger plan was the main focus of the jury trial, which resulted in a damages verdict against most defendants.)  Eventually, the larger scheme blossomed into the formation of a rival union, the NUHW.  It is doubtful that the NUHW was yet part of the scheme in March 2008.  There is no doubt, however, that during the run-up to the March 2008 amendment an SEIU trusteeship loomed large on the horizon, the incumbents feared they would lose control of the fund, and they wished to sabotage the ability of a trusteeship to remove them from the labor side of the fund.  *Indeed, that was the principal and motivating reason for the March 2008 amendment — to lock control of the employee side of the fund into the hands of the incumbent employee trustees so as to prevent the SEIU and the UHW from removing them in the event of a trusteeship.*  The contrary testimony was not credible.  This is a key finding.

16.    The defense arguments that the March 2008 amendment had no such purpose but was motivated by legitimate considerations is rejected.  In this connection, there is precious little contemporaneous support for defendants' supposed rationales.  For example, defense witness Joan Braconi testified that the concept of having a majority of the employee trustees appoint and remove other employee trustees arose a year earlier.  There is, however, no contemporaneous writing to support this claim.  The paper trail on the amendment (including emails) began only days before the amendment was adopted (TX 197).  To take another example, at trial, defendants claimed that the reason for the amendment was to diversify the

---

[4] The SEIU, in fact, imposed a trusteeship in January 2009.  The concept "trusteeship" over the UHW under the SEIU constitution should not be confused with the concept "trustee" of the fund.

United States District Court
For the Northern District of California

1    employee trustees and to bring onto the board someone not affiliated with Sal Rosselli.  But

2    when a post-amendment vacancy actually arose, due to the resignation of Will Clayton, the

3    purported new power was used to appoint yet another Rosselli ally, John Vellardita, not someone

4    from a different local.  Seen against the backdrop of the simultaneous scheming of defendants to

5    resist the feared trusteeship, the March 2008 amendment was drenched in self-dealing and

6    resistance to the SEIU.

7           17.    The management side trustees had no reason to vote against the amendment, for

8    it in no way diluted their own powers.  Again, the self-perpetuation feature was adopted only for

9    the employee side.

10          18.    To be sure, one can understand why the incumbents felt abused.  They were the

11   leaders who had achieved labor gains for healthcare workers in California.  They had bargained

12   for and obtained the fund.  Now, their hard-won victories seemed on the verge of being taken

13   from them and delivered to a trusteeship.  Resentment would have been natural.  But it should

14   also be remembered that the hard-won victories had been achieved as part of the SEIU and with

15   the support of the larger organization.  In turn, that organization had rules.  One was the power

16   of the SEIU to re-align the jurisdiction of the locals and the power to impose a trusteeship if the

17   decision of the SEIU to re-align the locals, once made, was frustrated by the leadership of any

18   local.

19          19.    The notion that Attorney William Sokol was the sponsor of the amendment or

20   somehow blessed it is rejected.  There is no such proof.  The record shows that he drafted the

21   March 2008 amendment.  Defendants have refused to waive the attorney-client privilege, which

22   is their right, but no inference is warranted that Attorney Sokol advised that the amendment was

23   valid.  For all the record shows, Attorney Sokol advised to the contrary.  Without a waiver of the

24   privilege, we cannot know the actual communications that took place.  The most that one can

25   legitimately infer is that Attorney Sokol was asked to draft the amendment and that he produced

26   a document he thought had, in his judgment, the best chance of being upheld, however great or

27   small that chance might be.  The overall trial record, including the testimony and subsequent

28

**United States District Court**
For the Northern District of California

10

United States District Court

For the Northern District of California

1   unguarded remark of Ms. Joan Braconi, show that the sponsors doubted that the amendment

2   would hold up in court.

3          20.     That any of the trustee defendants acted in good faith in reliance on counsel's

4   general involvement or otherwise is rejected because the true motive and purpose was to insulate

5   the individual defendants from removal in the event of an SEIU trusteeship, an improper motive

6   and purpose.

7          21.     That any of the defendants "construed" the trust agreement (such that deference is

8   somehow due their construction under Article IV(k)) is rejected because none of them

9   "construed" anything in the trust agreement.  There is no evidence that any defendant had in

10  mind any interpretation of Article IX (regarding amendments).  There is nothing to defer to.

11         22.     Although the jury found that defendant Laura Kurre was not guilty on the

12  damages issues, she had gone on a medical leave and was not active for the time period of

13  concern for the jury, January 2009.  But in March 2008, she was still in the thick of the plan

14  to resist a trusteeship.  Even if she and all others acted in good faith — which this order

15  rejects — the fact is that the March 2008 amendment in its *effect* was so at war with the limits

16  placed on the amendment power that it must be deemed void.

17         23.     After the January 2009 trusteeship was imposed, the UHW sent a memo to the

18  fund removing the employee trustees from the board.  Defendants' response was to invoke the

19  March 2008 amendment and to assert that UHW no longer had the power to remove them.

20         24.     With regard to the inadequate notice, the irregular board procedure, and the

21  purpose behind the amendment, this order adopts and accepts plaintiffs' proposed findings

22  Nos. 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, and 23.  This order adopts and accepts

23  defense proposed finding Nos. 1, 4, 5, 6, 14, 15, 16, 18, 21, 22, 24, 26, 27, 29, 31 and 32.

                              **CONCLUSIONS OF LAW**

25         1.      This order holds that the March 2008 amendment violated the basic principles of

26  the trust.  The UHW had negotiated for the establishment of the fund for the benefit of its

27  members, and it bargained for employer contributions to the fund.  To protect its stake in the

28  fund, the UHW was to appoint half of the fund trustees with power at will to remove them and to

                                         11

United States District Court

For the Northern District of California

1   appoint others.  The employer had the right to appoint the other half, directly or indirectly, also

2   at will.  This was spelled out first in the collective bargaining agreement and then in the

3   trust-fund charter.  The power to appoint and remove was an important prerogative of the UHW.

4   It rested with the UHW, through its executive officer.  If the executive officer changed, then so

5   did the appointment/removal power.  The executive officer would always owe a fiduciary duty to

6   the UHW and could be counted on to use the appointment/removal power in the best interests of

7   the UHW.  That was the clear-cut structure of the trust and the entire arrangement.  The intent

8   and the effect of the March 2008 amendment was to rob the UHW of this prerogative and to

9   misappropriate it to a self-perpetuating body of dissidents.[5]

10         2.       The March 2008 amendment was invalid under the trust agreement for at least

11   two reasons.  *First*, for the reason just stated, it altered the basic principles of the trust in

12   violation of Article IX of the Trust Agreement.  *Second*, it further violated Article IX because it

13   conflicted with the terms of the collective bargaining agreement called out on the opening page

14   of the trust agreement and thus further violated Article IX.  That collective agreement (TX 121

15   at 18) provided that the trust would "be governed by an equal number of labor and management

16   trustees.  Labor trustees are selected by labor; management trustees by management."  It is clear

17   that "labor" meant the UHW, the relevant collective bargaining agent.  The word "labor" was

18   consistently used in the collective bargaining agreement to refer to the bargaining agent, the

19   UHW.  The March 2008 amendment repudiated this collective bargaining agreement

20   requirement by robbing the UHW of this prerogative.[6]

21         3.       The fund is an employee-benefit plan governed by ERISA.  Both sides agree to

22   this much.  Both sides agree that ERISA § 502(a)(3) authorizes civil actions to enjoin any act

23

24

25         [5] And, a requirement of a Taft-Hartley fund is that control of the fund be evenly shared between
     employers and employees.  When the union appoints the employee trustees, there is no doubt that employees are
26   represented.  When, however, private individuals are appointed with the perpetual power to substitute other
     private individuals, there is no guaranteed nexus between the employees and the employee trustees.  The private
27   individuals may favor polices undesired by employees and their unions.

28         [6] The record shows no change in the collective bargaining agent.  Therefore, the record indicates that
     the UHW is still the agent and still has the authority to appoint the employee trustees.

United States District Court

For the Northern District of California

1    in violation of ERISA or the terms of the plan or to enforce the plan and that here the plan

2    documents include the trust agreement in question.

3           4.      They disagree over whether the UHW has standing to sue.  Contrary to

4    defendants' position, this order holds that the UHW is a fiduciary with standing to sue.

5    The UHW is seeking in this suit to vindicate its authority to appoint and to remove trustees

6    under the trust agreement.  The Ninth Circuit has specifically held that the function of appointing

7    and removing trustees is a "fiduciary" function and that the person or entity carrying out that

8    function is a "fiduciary."  *Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1448–49 (9th Cir.

9    1989).  *See also Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 (4th Cir. 1996); 29 C.F.R.

10   2509.75-8(D-4).  *Licensed Div. Dist. No. 1 MEBA/MNU v. Defries*, 943 F.2d 474, 478 (4th Cir.

11   1991), held that where a union asserts the authority to remove and replace fund trustees, but the

12   incumbent trustees refuse to recognize the union's authority, the union has standing as a

13   "fiduciary" to vindicate that authority.[7]

14          5.      On the merits, ERISA § 404(a)(1)(D) required the trustees to administer the plan

15   "in accordance with the documents and instruments governing the plan."  This was violated by

16   the March 2008 amendment, for the two reasons stated above.  This order holds that the

17   March 2008 amendment must be enjoined, that the UHW has the right to remove the defendant

18   employee trustees, and to appoint such replacements as the UHW sees fit.  This is dispositive.

19          6.      In the alternative, this order also grants plaintiffs' LMDRA § 501 claim.

20   Under LMRDA § 501(a), "[t]he officers . . . and other representatives of a labor organization

21   occupy positions of trust in relation to such organization," and "[i]t is, therefore, the duty of

22   each such person . . . to hold its money and property solely for the benefit of the organization

23   and its members and . . . to refrain from dealing with such organization as an adverse party."

24   29 U.S.C. 501(a).  This provision imposes on union officers and agents a duty to refrain from

25   "undisclosed self-dealing."  *See Morrissey v. Curran*, 650 F.2d 1267, 1274 (2d Cir. 1981).

26   Union agents violate this duty when they cause the union to engage in a transaction that confers

27   a benefit on themselves and fail to (i) obtain authorization from the members or a disinterested

28

---

[7] Plaintiffs' motion to re-open the trial record to prove standing by Rebecca Collins is **DENIED**.

13

1   body of union officers such as its executive board; or (ii) fully disclose the facts surrounding the

2   transaction to the authorizing body.  *See Brink v. DaLesio*, 667 F.2d 420, 424 (4th Cir. 1981);

3   *Noble v. Sombrotto*, 260 F. Supp. 2d 132 (D.D.C. 2003); *McCabe v. IBEW Local 1377*, 415 F.2d

4   92 (6th Cir. 1969).  Defendants Rosselli, Borsos, Cornejo, Kurre and Clayton transferred UHW's

5   appointment power to themselves without obtaining approval from UHW's executive board or

6   its members, and without disclosing to a disinterested person in the UHW that they were

7   proposing to give away that power.  That, by itself, constituted a violation of defendants'

8   fiduciary duty to the UHW.  For this reason as well, the March 2008 amendment must be

9   enjoined and the authority restored to the UHW to remove and to appoint trustees.  It is

10  unnecessary to reach various other theories of relief.

### INJUNCTIVE AND DECLARATORY RELIEF

12          For the foregoing reasons, the March 2008 amendment is hereby declared **VOID AND**

13  **UNENFORCIBLE**.  The UHW, through its executive officer, is hereby restored in its power to

14  appoint and to remove employee trustees of the fund.  The employee trustee defendants

15  (Rosselli, Borsos, Cornejo, Kurre and Vellardita) are hereby **REMOVED** as employee trustees,

16  and the employer trustees are hereby **ORDERED** to recognize the appointees made by the current

17  executive officer of the UHW as the valid employee trustees of the fund and henceforth to

18  recognize said executive officer's authority to remove and to appoint any employee trustee.

19

20          **IT IS SO ORDERED.**

21

22  Dated:  May 10, 2010.

23                                                          WILLIAM ALSUP
                                                            UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

14