United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES
INTERNATIONAL UNION, et al.,

    Plaintiffs,

  v.

SAL ROSELLI, et al.,

    Defendants.

No. C 09-00404 WHA

**ORDER DENYING DEFENDANTS'
MOTION FOR JUDGMENT
AS A MATTER OF LAW AND
MOTIONS FOR NEW TRIAL**

       The jury returned a verdict finding that some defendants were liable to plaintiffs for salary and benefits, diversion of resources, increased security, and/or lost dues. Some defendants were not liable for all of these categories, and some defendants were found not to be liable at all. Defendants have now filed a motion for judgment as a matter of law or for a new trial. They argue that prejudicial error was committed (1) in the final jury instructions, (2) in the rulings on certain motions in limine, (3) in the time limits set for the trial, and (4) in some evidentiary rulings. They also argue that the verdict is not supported by substantial evidence.

                       \*        \*        \*

       The jury instructions were correct and fairly covered the issues submitted to the jury. Enough has already been said on the record at the charging conference to support the instructions. Defendants' assertions regarding specific instructions shall nevertheless be examined briefly for the sake of clarity. Defendants specifically challenge the wording of Jury Instructions 16, 17 and 18.

*First*, defendants argue that Jury Instruction 16 could have misled the jury into awarding damages for breach of the SEIU Constitution — which defendants argue would have been impermissible — as opposed to for breach of fiduciary duty — which defendants concede would have been permissible. Jury Instruction 16 stated:

> Each defendant (except NUHW) owed a duty to UHW and SEIU to refrain from obstructing or frustrating any formal decision made by SEIU or UHW by their authorized decisionmakers. Before any such formal decision was made, however, defendants were free to make their case within the system on any pending issue and, in doing so, were free to use staff and resources of UHW for that purpose. Therefore, once the formal SEIU decisions on jurisdiction and trusteeship were made, it was the duty of defendants to refrain from obstructing or frustrating those decisions or employing local staff and resources to do so or inducing or attempting to induce others to do so. At all times — both before and after those decisions, defendants were free to express their opinions as union members on the jurisdiction and trusteeship decisions. Thus, even after a formal decision was made, defendants were free to state their disagreement with the decision so long as they did not obstruct or frustrate the ability of UHW or SEIU to carry out the decision and did not induce others to obstruct or frustrate the ability of UHW or SEIU to carry out the decision.

It is true that by purposeful design the jury instructions did not use the term "fiduciary duty," on the ground that a lengthy and legally technical explanation of the sources of the duties owed by defendants to plaintiffs would overly complicate the jury instructions and likely confuse the jury. Nevertheless, the duty described in Jury Instruction 16 — to refrain from obstructing or frustrating (or inducing others to obstruct or frustrate) the ability of UHW or SEIU to carry out decisions on jurisdiction and trusteeship — flows inevitably from defendants' fiduciary duties.

Defendants also argue that the jury should have been instructed in Jury Instruction 16 that defendants were not liable if they made a "reasonable, good faith interpretation of their obligations" under the SEIU Constitution. Such an instruction was unnecessary because no reasonable, good faith interpretation of defendants' duties would have allowed them to engage in conduct that frustrated or obstructed the ability of UHW or SEIU to carry out its decisions on jurisdiction and trusteeship once made.

Defendants also contend that the words "obstruct" and "frustrate" in Jury Instruction 16 permitted the jury to improperly find liability for protected speech activities. To the contrary, the jury instructions clearly distinguished between protected speech and unprotected conduct. Jury

2

Instruction 16 stated three times that defendants were free to engage in protected speech activity against SEIU's decisions. Contrary to defendants, the instructions did not invite the jury to award damages based on protected activities.

*Second*, defendants challenge Jury Instruction 17 which stated:

> Until their departure, all defendants who were officers, employees or stewards also owed a duty to UHW to avoid undermining its ability to function normally. If any defendant, before his or her resignation, violated this duty or conspired with others or induced others to prevent the normal functioning of UHW, then said defendant would be liable for breach of duty. Similarly, all such defendants owed a duty to UHW to use its resources solely for the benefit of UHW and not to divert them for personal or non-UHW purposes. Any information or document covered by a confidentiality agreement had to be treated by a defendant signing it as belonging to UHW and could not be diverted for personal or non-UHW purposes.

Defendants contend that the jury should have been instructed that this conduct could be excused if it was "duly authorized" by UHW. This instruction was rejected because no evidence was presented that the UHW executive board voted to authorize conduct in violation of the SEIU or UHW constitutions or LMRDA § 501, nor could any such authorization could be legally effective. Indeed, during closing arguments (Trial Tr. At 2619–20) defense counsel argued that not that such diversion was authorized, but only that no such diversion of resources occurred:

> "The plaintiffs seek millions of dollars in staff time and resources that were allegedly diverted by defendants in violation of this duty during January of '09. And I ask you, where is the proof? Where is the evidence that any single one of these defendants directed his or her staff members to breach their obligation to UHW and its membership? And I think there is zero evidence of that."

*Third*, defendants challenge Jury Instruction 18 which stated (emphasis added):

> All individual defendants had a right to resign from UHW and then form a new union, even a rival union. There can be no liability for these actions. *Nor can there be any liability, if it occurred, for the individual defendants merely to agree with each other to resign, even at the same time.* Defendants did not have, however, a right, while employed by UHW, to plan for the creation of a union or to undermine the ability of UHW to function after their departure. Nor did they have a right to use the resources of UHW to do so. Nor did defendants have the right to circulate or cause to be circulated decertification petitions prior to their resignation, although members were free to do so. Defendants who were officers of the union were barred from circulating or causing to be circulated any disaffiliation petitions although, again, members were free to do so.

3

Defendants argue that this instruction failed to distinguish between merely thinking or talking about creating a rival union and taking active steps to do so. Making plans for the creation of a union or to undermine the ability of UHW to function after defendants' departure, as described in the instruction, necessarily includes active steps beyond thinking or talking idly. As stated in the instruction, "Nor can there be any liability, if it occurred, for the individual defendants merely to agree with each other to resign, even at the same time." Accordingly, this instruction clearly distinguished between thoughts or conversations on the one hand and active steps on the other.

\*       \*       \*

Defendants next revisit many of the rulings on the motions in limine. The reasoning underlying the rulings on the motions in limine was described at length in a previous written order (Dkt. No. 558). The Court is convinced that its rulings on the motions in limine were correct. More is unnecessary.

\*       \*       \*

In the present case, the final pretrial order gave each side 18 hours to examine witnesses (counting direct examination, cross-examination, re-direct examination, re-cross examination, etc.). Opening statements and closing arguments were *not* counted against this limit. These limits were subject to enlargement on "safety valve" terms, upon a showing of good cause.

Trial courts have broad authority to impose reasonable time limits to prevent undue delay, waste of time, or needless presentation of cumulative evidence. *Navellier v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001). Defendants argue that the Court abused its discretion by rejecting plaintiffs' suggestion that each side receive 25 years. Defense counsel, however, wholly failed to justify lengthy time extensions. Counsel was directed to specify for each witness all non-cumulative testimony, but only conclusory and repetitive proffers were made, as noted in the final pretrial order. Defendants did not identify, for example, additional evidence they would have introduced if more time had been given. Defendants argue that such proffers would have been futile, but the record shows clearly that the Court set the existing time limits based on the

information given, and was willing to adjust those limits based on good cause shown at trial. The trial revealed the time limits of 18 hours given to each side were sufficient.

Moreover, defense counsel wasted large amounts of time with argumentative and inflammatory questioning, which consumed unnecessary time.

\*    \*    \*

Defendants argue that the Court abused its discretion when ruling on conspiracy-related evidence during trial, denying defendants the opportunity to introduce relevant evidence that their motives were reasonable, in good faith, and different from the conspiratorial motives attributed to them by plaintiffs. Defendants do not explain which evidentiary rulings during trial they are challenging or how the Court erred in making these unidentified rulings. In the Court's view, the defense actually laid before the jury considerable evidence of their motives — but the jury saw through it as a smokescreen. Accordingly, they have failed to present any basis for granting a new trial on this ground.

\*    \*    \*

Prior to trial, the Court explicitly ruled that the grievances leading to the schism between the SEIU and defendants were peripheral to the issues to be decided in this trial, as was the issue of whether SEIU was right or wrong when it decided to institute a trusteeship over UHW and to consolidate long-term care workers in California into a single local union. The parties were put on notice that the trial would not be allowed to degenerate into a battle of grievances with the SEIU leadership. The Court stated that if either side made such arguments to the jury, "I'm going to say to the jury it's irrelevant. We're going to stick to the real issues in this case" (3/22/10 RT at 25).

Several times during their opening statement and at various points during the trial, plaintiffs objected that defendants were trying to introduce evidence or otherwise suggest to the jury that SEIU's leadership had adopted the jurisdictional and trusteeship decisions in bad faith for the purpose of retaliating against defendants. In response, the Court sometimes sustained these objections and sometimes warned defense counsel against making arguments about irrelevant topics to the jury.

5

For example, during the opening statement, defendants' counsel stated, "And they will tell you that they were willing to play ball with the international union, but they felt disappointed that the international union was not willing to play ball with them. They saw all the decisions going one way and this was not, from their point of view, benefiting the members" (3/23/10 RT at 287). Responding to plaintiffs' objection, the Court stated, "I understand your objection. Mr, Siegel, you must be careful not to get into things that are of no concern to the jury" (*ibid*.). The Court, however, did not sustain that objection.

Later in the opening statement, defense counsel told the jury that the evidence would describe how the leaders of the SEIU including its president Andy Stern treated defendants at the 2008 SEIU convention: "And they will tell you that what happened at that convention is that they were completely shut down. There was an intimidation campaign that occurred" (*id.* at 291). In response to plaintiffs' objection, the Court asked defense counsel,"If this is a smear campaign against Mr. Stern, you can't get into it. Is that what you're doing?" (*id.* at 292). After defense counsel replied that it was not, the objection was overruled (*ibid*.).

Later in the opening statement, defense counsel told the jury that the evidence would explain the sequence of meetings by which the SEIU came to its trusteeship and jurisdiction decisions (*id.* At 302–03). Plaintiffs' counsel objected that defense counsel was attempting to argue the issue of the validity of the trusteeship and jurisdiction decisions and the Court sustained the objection (*ibid*.).

After the opening statements, the Court sustained objections to evidence regarding these issues. For example, the Court struck testimony of defendant Rosselli that referred to SEIU leaders' involvement in a plot to destroy UHW (3/31 RT at 1771). The Court stated, "We can't be litigating whether there was a subplot within a plot to destroy the union. I'm going to strike that testimony. That is irrelevant to the case. It's irrelevant. It may be relevant to what the two unions hate each other for, but what the jury and I have to decide, this is not relevant" (*id.*).

Defendants argue that the Court abused its discretion by ruling on the objections described above and other similar objections during the trial because it excluded relevant evidence through which defendants sought to explain their intentions and the events that shaped their intentions.

6

1  Defendants also argue that the Court's statements improperly conveyed to the jury that the Court
2  regarded defense counsel as unethical and incorrectly accused counsel of violating motions in
3  limine.
4  Although the parties in this action had a lengthy, complex and contentious history, the
5  issues for the jury to decide were more narrow. The rulings on the parties' motions in limine
6  clearly explained that while some background evidence would be allowed, the correctness of
7  events and decisions that were mostly peripheral to the issues to be decided at trial would not be
8  relitigated. The Court's rulings and statements at issue informed the jury about what matters were
9  and were not relevant based on the rulings at the motions in limine, and requested that counsel
10 abide by those rulings. They did not impugn the integrity or ethics of defense counsel in any way.
11 Accordingly, defendants have failed to present any basis for granting a new trial on this ground.

\*          \*          \*

13 The final question is whether the evidence supported the verdict under the instructions
14 given to the jury. Further slants on the law from case law cites are inadmissible at this stage.
15 With respect to whether there was sufficient evidence to support the jury verdict that
16 defendants breached a duty to UHW, defendants argue that it was necessary for the jury to infer
17 that they acted in bad faith. But bad faith is not an element of a breach of fiduciary duty claim
18 under LMRDA § 501, and the final jury instructions did not require the jury to so find. This order
19 will therefore not disturb the verdict.

\*          \*          \*

21 For the reasons above, defendants' motion for judgment as a matter of law or for a new
22 trial is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 23, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7