IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES
INTERNATIONAL UNION, et al.,

    Plaintiffs,

  v.

SAL ROSSELLI, et al.,

    Defendants.
                                      /

No. C 09-00404 WHA

**PERMANENT INJUNCTION UNDER SECTION 301**

Plaintiffs request a permanent injunction under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. 185(a), and have requested a permanent injunction under Federal Rule of Civil Procedure 65 against the sixteen individual defendants against whom the jury awarded damages (*see* Docket No. 623), specifically, defendants John Borsos, Ralph Cornejo, Marti Garza, Glenn Goldstein, Emily Gordon, Jason Johnson, Mark Kipfer, Gabe Kristal, Barbara Lewis, Daniel Martin, Jorge Rodriguez, Sal Rosselli, Fred Seavey, Peter Tappeiner, John Vellardita, and Phyllis Willett (collectively, the "Section 301 defendants"), as well as all persons or entities who have acted in active concert or participation with them. The Section 301 defendants oppose this request.

Having considered the submissions of the parties and the trial record in this matter, the Court finds a permanent injunction is warranted. The trial record contains substantial evidence that each of the Section 301 defendants violated the Constitution and Bylaws of Plaintiff Service

Employees International Union by failing to return property belonging to plaintiff United Healthcare Workers-West ("UHW") to the trustees duly appointed to take charge of UHW's affairs after the institution of the trusteeship on January 27, 2009, and/or induced others to keep such UHW property. Article VIII, Sections 7(a) & (b) of the SEIU Constitution authorized the international president to appoint a trustee "to take charge and control of the affairs of a Local Union," and provided that the appointed trustee "shall be authorized and empowered to take full charge of the affairs of the Local Union." Article VIII, Section 7(c) of the SEIU Constitution in turn imposed a correlative obligation on union members and officers to take certain action necessary to permit the trustee to take full charge of the affairs of the local union: "Upon the institution of [a] trusteeship, all moneys, books and property of the Local Union . . . shall be turned over to the Trustee." Although Article VIII, Section 7(c) of the SEIU Constitution was, by its terms, self-executing and imposed the duty to return local union property even without a demand therefor, in fact the UHW trustees affirmatively demanded the return of all UHW property after the institution of the trusteeship. The trial record establishes that each of the Section 301 defendants violated Article VIII, Section 7(c) of the SEIU Constitution by taking UHW property and/or by inducing others to do so, which was not returned to the trustees upon the institution of the trusteeship.

Section 301(a) provides that "contracts between . . . labor organizations" are enforceable in the federal courts. 29 U.S.C. 185(a). In this very case, the Ninth Circuit has already decided that the SEIU Constitution is a "contract[] between . . . labor organizations" within the meaning of Section 301(a) that can be enforced through injunctive relief against the defendants in this case. *Service Employees Int'l Union v. Nat'l Union of Healthcare Workers*, 598 F.3d 1061, 1070–73 (9th Cir. 2010). Each of the Section 301 defendants was a member, and some were additionally officers, of UHW at all times relevant to this case, through at least the date of the institution of the trusteeship. As such, under Articles 27 and 28 of the UHW Constitution, each was bound, as a member and/or officer of UHW, to "faithfully observe" the SEIU Constitution. As noted above, each failed to do so and permanent injunctive relief to remedy such violations is warranted under Section 301 and Rule 65.

2

The legal standard applicable to plaintiffs' request for a permanent injunction was set forth by the Supreme Court in *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted):

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. . . . The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

Here, all of the elements of this test are satisfied.

The first *eBay* factor is whether plaintiffs have suffered an irreparable injury. Here, plaintiff UHW has suffered an irreparable injury by the loss of its records and property, most pointedly, certain of its collective bargaining, grievance and other files, as well as its membership contact information and assessments, maintained in the form of lists, telephone trees and databases, at least some of which are still missing. Indeed, even as to such UHW information that has been returned to UHW, there is no indication that all of the copies of such information have been returned to UHW.

The second *eBay* factor is whether available legal remedies, such as monetary damages, are inadequate to compensate for the injury plaintiffs have suffered and will suffer. *First*, there is no way to put a monetary value on UHW's collective bargaining, grievance and other files. The value of those items does not inhere in the physical attributes of the files, but in the information contained therein, and there is no available market for that information because it is generally of value only to the parties involved (and, in this case, to a rival union). *Second*, as to the membership lists and assessment information, pursuant to the final pretrial order (*see* Dkt. No. 558 at 4:4-16), plaintiffs did not seek any damages for that information prior to January 2009. And even as to the updates to the membership lists and assessment information during January 2009, available legal remedies, such as monetary damages, are inadequate to compensate for the injury suffered. The damages plaintiffs sought for those items for January 2009 only

3

related to the monetary cost of the UHW resources diverted to create the updates. No monetary damages were or are available to compensate plaintiffs for other aspects of the bundle of rights that constitute "ownership" of such property, most importantly the right to exclude outsiders (such as defendants and their agents) from possession and use of that property.

The third *eBay* factor is whether, considering the balance of hardships between the plaintiffs and defendants, a remedy in equity is warranted. The hardship to plaintiffs of being deprived of its property is twofold. *First*, UHW is unable to use its records and property to assist in fulfilling its representational obligations, for example, using records in grievance or collective bargaining files as evidence supporting its position in future grievances as to whether a collective bargaining agreement has been violated or whether an employer had "good cause" to discipline an employee. *Second*, UHW is harmed by the misuse of the property by others to its detriment, for example, the use of UHW membership contact and assessment information to further the attempts of defendant National Union of Healthcare Workers ("NUHW") to solicit the support of UHW-represented employees to replace UHW with NUHW as their collective bargaining representative. Although defendants are certainly within their rights to seek to supplant UHW with NUHW, they should not use stolen UHW property to do so. On the other side of the equation, although a modest amount of effort would be required, there would be no *hardship* to the Section 301 defendants in being required to return UHW property.

The fourth *eBay* factor is whether the public interest would be disserved by a permanent injunction. Clearly, it would not. The public interest is obviously served by the enforcement of contractual commitments and property rights in general. The public interest in the labor context specifically favors the enforcement of Section 301 agreements such as the SEIU Constitution.

Finally, this order recognizes that even as late as the eve of trial, boxes of UHW files taken from the UHW offices by defendants or their confederates were being returned under the preliminary injunction. Fourteen boxes of such material mysteriously were deposited in front of defense counsel's law office, a day or two before trial. This was after express or implied representations by the defense that all had been returned. In light of this, there is reason to expect yet more missing files will turn up. There is still a need for an injunction.

4

**PERMANENT INJUNCTION**

Each of the Section 301 defendants, specifically, defendants John Borsos, Ralph Cornejo, Marti Garza, Glenn Goldstein, Emily Gordon, Jason Johnson, Mark Kipfer, Gabe Kristal, Barbara Lewis, Daniel Martin, Jorge Rodriguez, Sal Rosselli, Fred Seavey, Peter Tappeiner, John Vellardita, and Phyllis Willett, is hereby permanently enjoined from possessing, maintaining, using, copying, duplicating, distributing, disseminating, or otherwise exercising any custody or control over UHW property, as defined below (including but not limited to any UHW information, as also defined below), and must immediately take all steps necessary to effectuate the return to UHW of all UHW property (including but not limited to all UHW information) in his or her possession, custody or control, upon service of this order, except as specifically set forth below with regard to electronic UHW information. Such return of UHW property shall be effectuated through UHW's counsel of record in this action.

Furthermore, pursuant to Federal Rule of Civil Procedure 65(d)(2)(C), this order shall be binding upon all "other persons who are in active concert or participation with [the Section 301 defendants, or their officers, agents, servants, employees, and attorneys]," as long as they receive actual notice of the injunction by personal service or otherwise. So that there is no confusion, the Court finds that defendant NUHW acted "in active concert or participation" with the Section 301 defendants, and is therefore bound by this order. The jury's verdict imposing monetary liability on defendant NUHW supports that conclusion. The Ninth Circuit expressly found in its decision denying defendants' appeal from the temporary restraining order in this case, which had been issued pursuant to plaintiffs' Section 301(a) claim: "We reject appellants' argument that the district court cannot order injunctive relief against NUHW because enforcement against the individual defendants who control NUHW effectively enjoins NUHW. *See* Fed. R. Civ. P. 65(d)(2) (stating injunction binds persons in active concert or participation with the parties)." *SEIU v. NUHW*, 598 F.3d at 1073 n.8. All other persons or entities who have acted "in active concert or participation" with the Section 301 defendants, with defendant NUHW, or with the "officers, agents, servants, employees [or] attorneys" of any of the same, are also bound by this order, as long as they receive actual notice hereof "by personal service or otherwise."

5

1  Plaintiffs must serve non-parties. To facilitate notice to parties, defendants' counsel of record
2  shall immediately provide actual notice of this order "by personal service or otherwise" to the
3  Section 301 defendants.

4  This order is anchored in the principle that all communications, information or property
5  made or acquired by any officer or employee of UHW in the course of their employment belongs
6  to UHW. This would include notes, emails, letters, memos, forms, post-its, badges, photographs
7  and so on — any *information*, however recorded, and any *property*, however embodied.
8  This would also include any and all information pertaining to the UHW resistance scheme, for all
9  of that was — up until the moment of the trusteeship and notice thereof — done in the course of
10 employment for UHW.

11 Earlier in this litigation, defendants attempted to draw a distinction between "official
12 property" versus all other materials. This is a counterfeit distinction. *Any* information generated
13 by a UHW employee or agent in the course of his or her UHW employment, including
14 information regarding how UHW should resist any trusteeship efforts, *belongs to UHW*, not to
15 the individual employees or agents. Although new management has assumed control of UHW
16 (and has done so through a process of uncontested legitimacy), the change in management does
17 not change the fact that UHW still owns the information and is entitled to get it back — even if it
18 means that UHW's new management will learn of the details of the resistance scheme. Nor does
19 informality matter. It does not matter that UHW information was placed on informal notes or
20 placed by defendants on private cell phones or Blackberries (or other PDAs). *Any* information
21 recorded in *any* manner in the course of UHW employment, including UHW efforts to resist any
22 trusteeship, belonged to UHW at the time and *still* belongs to UHW today.

23 With this in mind, certain terms used in this order will be understood to mean as follows.
24 "UHW information" means information communicated or acquired by any UHW officer or
25 employee in the course of his or her employment. "Electronic UHW information" means such
26 information stored in electronic form, such as e-mails, text messages, voice mails, digital
27 photographs or videos and word-processed documents. "Non-electronic UHW information"
28 means all other UHW information. "UHW property" includes all "UHW information" as well as

6

any other item purchased with UHW funds or acquired for UHW purposes by any officer or employee of UHW.

The sole exception to the duty to return to UHW all UHW property is with regard to electronic UHW information. Electronic UHW information stored on any electronic devices that have already been produced to plaintiffs or their vendors for imaging in the course of this litigation need not be returned to UHW (to the extent that that electronic UHW information was stored on the electronic device at the time it was produced to plaintiffs or their vendors). Rather, the owners and/or possessors of such devices shall be prohibited from possessing, maintaining, using, copying, duplicating, distributing, disseminating, or otherwise exercising any custody or control over that electronic UHW information and shall instead immediately double-delete that information from those devices so that it is no longer accessible or useable without forensic tools. On the other hand, electronic UHW information stored on any electronic devices that have *not* already been produced to plaintiffs or their vendors for imaging in the course of this litigation shall immediately be copied onto a portable storage device (such as CD, DVD, or external hard drive, etc.) and shall be returned to UHW by delivery of that portable storage device. The owners and/or possessors of devices containing electronic UHW information that have not already been produced to plaintiffs or their vendors for imaging in the course of this litigation shall be prohibited from possessing, maintaining, using, copying, duplicating, distributing, disseminating, or otherwise exercising any custody or control over that electronic UHW information, except as necessary to copy that electronic UHW information to a portable storage device and return it to UHW, and shall, after copying that electronic UHW information to a portable storage device and returning it to UHW, immediately double-delete that information from those devices so that it is no longer accessible or useable without forensic tools. The intent of this exception is to insure that the Section 301 defendants, and any person or entity that has acted in active concert or participation with them, is unable to use any electronic UHW information, and to secure the return of the same to UHW, without unduly burdening the owners

1  of those devices by requiring them to turn over to UHW their electronic device on which such
2  electronic UHW information is stored.
3  　　　As with the temporary restraining order, nothing in this order prevents anyone from
4  advancing the cause of NUHW by using UHW membership information that person happens to
5  remember (*see* pages 5 and 6 of Dkt. No. 101).  This order does, however, require the UHW
6  membership lists and the like to be returned along with all copies (with no copies retained) to the
7  extent ordered above.

**IT IS SO ORDERED.**

Dated:  June 24, 2010.

　　　　　　　　　　　　　　　　　　WILLIAM ALSUP
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE