IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SERVICE EMPLOYEES
INTERNATIONAL UNION, et al.,

    Plaintiffs,

  v.

SAL ROSSELLI, et al.,

    Defendants.

No. C 09-00404 WHA

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR EXPENSES UNDER RULE 37**

    Plaintiffs now move for expenses against defendant National Union of Healthcare Workers, for alleged disobedience of a court order concerning post-judgment discovery. The motion is **GRANTED IN PART**. Plaintiffs are entitled to expenses under Federal Rule of Civil Procedure 37(b)(2)(C) from NUHW in the amount of $2500.00.

    There has been excessive post-judgment drama in this action. On April 12, 2010, a money judgment was entered against the individual defendants and defendant NUHW. Plaintiffs attempted to execute judgment by, among other things, filing a writ of execution against one of NUHW's bank accounts. Since then, the situation devolved into a tussle over discovery from NUHW about its finances. On August 24, plaintiffs filed a motion to compel discovery. The basis for this motion was NUHW's refusal to produce both a deponent and documents concerning its financial condition (*see* Dkt. No. 781). An order set a deadline for opposition by defendants (September 6) and a hearing date on the motion (September 15).

In the meantime, on August 31 defendants asked for clarification — they wanted to know what percentage of the judgments against them they would have to post as a bond in order to obtain a stay of execution. An order clarified that the bond would have to be in the amount of 125 percent of judgment (Dkt. No. 789).

Defendants filed an opposition on September 6. Then, on the eve of the hearing, defendants filed a form of proposed supersedeas bond, the form of which drew an objection from plaintiffs. On September 15, the parties met in the jury room to meet and confer. No agreement was reached. Then the motion to compel was heard. The hearing addressed both an acceptable form of bond for the individual defendants and discovery as to NUHW. Regarding a form of bond, the individual defendants were granted leave to post half of the 125 percent of judgment in cash with the Clerk of Court as well as file a statement under oath including certain required information. Regarding discovery, NUHW was ordered to turn over the documents requested by plaintiffs by September 24, and to produce Phyllis Willett for a deposition on October 7 at 9:00 a.m.

A written order was entered that memorialized the orders from the hearing (Dkt. No. 796). That order stated:

> Defendant NUHW shall produce . . . the documents requested by plaintiffs in their July 1, 2010 Notice of Deposition and Request to Produce Documents (Docket No. 780-1) ("Notice and Request"), with two modifications: (a) Defendant need not produce the items identified in request 8 or request 10 of the Notice and Request; and (b) the paragraphs of the Notice and Request that set forth January 1, 2010 as the cutoff date for production of documents shall be modified to set a March 1, 2010 cutoff date.

These included: "All account statements . . . for all accounts of any type (including but not limited to bank accounts, . . . ) maintained in the name of National Union of Healthcare Workers [] *or for the benefit of NUHW or in which NUHW has any legal or beneficial interest*" (Dkt. No. 780-1) (emphasis added).

NUHW then did turn over some documents to plaintiffs. These included its general ledger. On September 30, however, plaintiffs filed this motion for expenses (Dkt. No. 801). Based on their review of documents that were produced, plaintiffs claimed that NUHW withheld documents that would identify: (1) a Siegel & Yee account that NUHW was allegedly using as its

2

operating account; (2) the location of $265,000 withdrawn from a Mechanics Bank account on September 9; and (3) the state of NUHW finances subsequent to September 15. (Siegel & Yee are counsel for defendants herein.) Plaintiffs requested immediate relief. They needed the withheld documents in order to prepare for the deposition on October 7. NUHW was ordered to respond by October 3.

NUHW filed a three-page "response" to the motion, without any supporting documents or declarations (Dkt. No. 803). It flatly stated that plaintiffs were wrong and that NUHW had produced everything. For example, it stated that there are no documents concerning the Siegel & Yee account other than the general ledger entries. Based on this response, an order on October 4 stated:

> More facts are needed before the motion for sanctions can be resolved. ***Defendant NUHW is ordered to file a statement under oath*** identifying the bank and account number of the Siegel & Yee account listed in its general ledger, verifying that there are no documents concerning the Siegel & Yee account, and stating what happened to the $265,000 withdrawn from the Mechanics Bank account on September 9.

(Dkt. No. 804 (emphasis added).) This bears repeating: ***NUHW was ordered to file a statement under oath*** explaining the Siegel & Yee account, among other things. The order required that the statement be filed by October 5. It also confirmed that the deposition should go forward on October 7. Anticipating that the deposition might yield more information relevant to the motion for expenses, the order also allowed further briefing from both parties by October 14. It set a date for a hearing on the motion: October 20 at 3:00 p.m.

Come October 5, however, ***NUHW did not file a statement under oath***. Instead, it filed another three-page "response" (Dkt. No. 805). It stated, "[c]ounsel has been unable to locate an [sic] NUHW representative authorized to respond . . . during the time allotted." Instead, counsel briefly addressed — though not under oath — the substance that was required to be addressed by a statement under oath. Given counsel's assertion that it had not had enough time to get a statement under oath, a new order "granted [NUHW] leave to file the requested statement under oath anytime through October 20, 2010, the date of the hearing on the motion for sanctions" (Dkt. No. 810).

3

United States District Court
For the Northern District of California

1   Come October 5, NUHW did file a proposed supersedeas bond "application." Notably,
2   NUHW had not posted a bond with the Clerk or anyone else. A subsequent order responded,
3   "defendant NUHW was not granted leave to post a supersedeas bond in the same manner as the
4   individual defendants [had been]. In fact, discovery was granted as to defendant NUHW, and that
5   discovery is ongoing" (Dkt. No. 811). Of course, NUHW was always free to post a bond in the
6   amount of 125 percent of the judgment against it to obtain a stay of execution, as described above
7   (*see* Dkt. No. 789), but it had not done so. The application was not the same thing because
8   NUHW already knew what it had to do to obtain a stay of execution — post the money — and it
9   did not need court approval of a new application to do that.

10   On the eve of the deposition set by court order for October 7, plaintiffs filed a notice that
11   on that very evening (October 6 at 5:19 p.m.), Attorney Dan Siegel (representing NUHW and the
12   deponent, Phyllis Willett) sent an e-mail to counsel for plaintiffs stating, "We will not be
13   appearing for the deposition tomorrow. Instead we will post the bond, which will automatically
14   stay execution and make your discovery moot." Plaintiffs applied to compel the deposition,
15   counsel having already traveled to San Francisco from Washington, D.C. to take the deposition.
16   At 8:20 a.m. on October 7, an order stated that if a proper bond was posted in the Clerk's office
17   by 11:00 a.m. then Ms. Willett need not appear for the deposition. Though it is not clear at what
18   time this occurred, NUHW posted the bond with the Clerk of Court in Oakland on October 7
19   (Dkt. No. 816). Execution of judgment as to defendant NUHW was thus stayed (Dkt. No. 822).
20   It appears that the deposition did not occur.

21   After all of this, we were left with the residual motion for expenses. As stated, the parties
22   were granted leave to file further briefing by October 14. Only plaintiffs did so (Dkt. No. 824).
23   At the time for the scheduled hearing on the motion, October 20 at 3:00 p.m., only plaintiffs'
24   counsel appeared. The courtroom deputy called Attorney Dan Siegel, who was at his office. He
25   spoke to the undersigned and plaintiffs' counsel in open court over speakerphone. The hearing
26   was continued to the next morning at 9:00 a.m. Attorney Siegel requested an opportunity to
27   oppose plaintiffs' brief in support of their motion, even though he had skipped his opportunity to
28   do so on October 14. He was granted leave to file a response by 5:00 p.m. He filed a declaration

4

in which he (1) repeated content from NUHW's October 5 filing, and (2) apologized for his failure to appear at the hearing. The further hearing was held on October 21.[*]

It bears repeating that the instant motion for expenses relates to defendant NUHW and not the individual defendants. This is a retrospective motion — again, execution of judgment is now stayed as to NUHW. But that does not moot the motion because expenses may still be warranted if NUHW violated a court order.

A party cannot disobey a court order with impunity. Federal Rule of Civil Procedure 37(b)(2) states in part (emphasis added):

> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31(a)(4) — fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . .
> (vii) <u>treating as contempt of court the failure to obey any order</u> except an order to submit to a physical or mental examination. . . .
>
> (C) Payment of Expenses. Instead of or in addition to the orders above, <u>the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure</u>, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Plaintiffs argue primarily that NUHW disobeyed the court order from the hearing on September 15 that was subsequently memorialized in a written order (Dkt. No. 796). The theory is that NUHW did not produce all of the documents that it was ordered to.

Again, NUHW was ordered to turn over: "All account statements . . . for all accounts of any type (including but not limited to bank accounts, . . . ) maintained in the name of National Union of Healthcare Workers [] *or for the benefit of NUHW or in which NUHW has any legal or beneficial interest*" (Dkt. No. 780-1) (emphasis added). Under any reasonable reading, this language required NUHW to produce bank account statements that were in its possession, for any account that was being maintained to pay its general operating expenses.

---

[*] Attorney Siegel's declaration of October 20 also stated that he had not been served with plaintiffs' brief of October 14, but plaintiffs served it by messenger on October 14 (*see* Dkt. No. 820).

5

NUHW failed to produce documents for the bank account that has been referred to by the parties as the Siegel & Yee account. The Siegel & Yee account was referred to in NUHW's general ledger as the account out of which it was paying its general operating expenses. Plaintiffs argue that NUHW violated the court order by not turning over the statements. NUHW's best argument in response is that "Siegel & Yee — not NUHW — has bank statements regarding the above account" (Dkt. No. 805).

We do not know whether this is true. *NUHW was long ago ordered to file a statement under oath* "identifying the bank and account number of the Siegel & Yee account listed in its general ledger, verifying that there are no documents concerning the Siegel & Yee account, and stating what happened to the $265,000 withdrawn from the Mechanics Bank account on September 9." It did not obey this order. It was given extra time to do so. It still did not. Hence we cannot know whether NUHW withheld documents, because *it violated the court order requiring an explanation under oath* regarding the Siegel & Yee and Mechanics Bank accounts. The purpose of that order was to get more facts about what documents, if any, were missing from the document production about these accounts. It is true that Siegel & Yee was not ordered to turn over any documents. But it was NUHW that was ordered to explain under oath what materials it had. There has been a studied effort by NUHW and counsel to evade this order.

Turning now to the declaration of Attorney Siegel filed on October 20, this was not by anyone at NUHW. The declaration did not address whether NUHW had any documents concerning the Siegel & Yee account. Attorney Siegel did say that NUHW had no "control" of the bank statements for the Siegel & Yee account. But this did not answer whether NUHW had possession of any documents. Although Attorney Siegel swore that he believed the bank statements were not responsive to plaintiffs' document request, that was beside the point. We were trying to figure out what documents existed on a very specific topic, and the point of the declaration was to find that out. Finally, the declaration did not clear up what happened to the $265,000 withdrawn from the Mechanics Bank account on September 9. On this point the declaration was based on mere information and belief, no better than hearsay. So, even at the late date of October 20, NUHW did not comply with the court order.

6

At the hearing on October 21, Attorney Siegel made several unsworn revelations. Upon inquiry, he confirmed that large amounts of money had indeed been transferred from NUHW to the Siegel & Yee account and that the account was being maintained for the benefit of NUHW so it could conduct its business. He revealed that this was a deliberate "scheme" (his word) so that NUHW could avoid the amount of judgment in this case being levied against that account until NUHW could raise more money to post a bond. NUHW's money was moved there and used to pay ongoing salaries and expenses.

Now that the bond has been posted there is no need to be secretive. Now it seems clear that at the time in question NUHW was trying to hide the ball and stay one step ahead of the judgment creditor. While Attorney Siegel freely admitted at the hearing what was only suspected before, the whole point of discovery was to confirm the suspicion. Although plaintiffs figured out what was going on from the general ledger, the point was that they could not levy the Siegel & Yee account as *they did not have any identifying information for it* — including the name of the bank and the account number. Getting more information was a reason for the court-ordered declaration.

When NUHW did eventually post a bond with the Clerk of Court, it mooted discovery as to its finances. But that does not excuse NUHW's violation of the order requiring an explanation under oath back when matters were hanging fire. Much work might have been saved if the explanation had been forthcoming. The violation was not substantially justified and other circumstances do not make an award of expenses unjust.

Plaintiffs are thus entitled to "the reasonable expenses, including attorney's fees, caused by" NUHW's failure to comply with the order requiring a statement under oath. FRCP 37(b)(2)(C). Plaintiffs, however, have utterly failed to document any fee award and instead have simply stated that they will do so if they prevail on their motion. But they were under an obligation to do so concurrent with their motion. We will not prolong this and pile up yet more time and expenses on satellite litigation over fees. This order finds that plaintiffs shall receive $2500.00. This is the undersigned's reasonable estimate of the percentage of expenses from these post-judgment proceedings that was caused by NUHW's order violation. To be clear, this award

7

is limited to plaintiffs' reasonable expenses incurred by reason of NUHW's disobeying the court order. No doubt, plaintiffs spent much more than $2500.00 on the overall discovery effort. But it did bear fruit. Plaintiffs have now gotten the benefit of the nearly $900,000 bond that NUHW posted. This must be taken into account in determining the equities. With that in mind, $2500.00 will compensate plaintiffs for their lost expenses attributable to the failure to supply the court-ordered statement. NUHW shall file evidence that it has paid plaintiffs this money by **NOVEMBER 5, 2010**.

Plaintiffs' further request for expenses under 28 U.S.C. 1927 and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), is **DENIED**. The relief granted under Rule 37 is adequate to compensate plaintiffs.

Lastly, plaintiffs contend that "the conduct in which NUHW and its counsel engaged was not merely vexatious but criminal under California law — as to both NUHW and its counsel." The lawyers in this case have accused each other of monumental wrongs over the past two years. If plaintiffs really feel that there has been a professional violation, plaintiffs can consider on their own whether to refer counsel to the state bar. This order does not endorse that idea one way or the other.

Dated: October 22, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8